### STATE OF CONNECTICUT *v.* ERIC MAIA
### (AC 15623)

Heiman, Spear and Hennessy, Js.

---

Argued April 21—officially released July 15, 1997

*Louis S. Avitabile*, special public defender, for the appellant (defendant).

*Mitchell S. Brody*, assistant state's attorney, with whom, on the brief, was *Michael A. Gailor*, assistant state's attorney, for the appellee (state).

*Opinion*

HENNESSY, J. The defendant, Eric Maia, appeals from a judgment of conviction, following a jury trial, of possession of narcotics with intent to sell in violation of General Statutes § 21a-278 (b), possession of marijuana in violation of General Statutes § 21a-279 (c), and possession of marijuana within 1500 feet of a school in violation of General Statutes § 21a-279 (d). On appeal, the defendant claims that the trial court improperly denied his motion to suppress evidence of crack cocaine, marijuana and a pair of metal knuckles found on or near his person. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On February 8, 1994, at approximately 2:30 p.m., Sergeant Michael McMahon and Officer Timothy

Wright, members of a tactical narcotics team in the vice and intelligence division of the Waterbury police department, were patrolling the areas of Walnut Street and Wood Street in an unmarked police vehicle.[1] They saw the defendant and Gene Grant standing in front of a house at 264-266 Walnut Street. Neither the defendant nor Grant lived at that address. The officers noticed that Grant had several small plastic bags in his hands and was examining them. McMahon recognized the bags from his previous investigations as packaging for narcotics. The officers drove their vehicle in front of the two men. The officers did not draw their guns or say anything to the men. Upon seeing the vehicle, Grant began to put the plastic bags into his mouth and one fell out. McMahon seized the dropped bag and found that it contained a white rock substance. The substance in the bag was later identified as crack cocaine.

Meanwhile, the defendant ran down an alley next to the residence. Without drawing his weapon, Wright followed the defendant into the alley and found footprints in the snow that led to a door that opened onto the rear porch of the residence. Wright believed the footprints were left by the defendant and that he had gone inside. The officer opened the porch door and saw the defendant running up the backstairs. On the second floor landing, the defendant dropped a plastic bag containing a white rock substance that was later determined to be 24.8 grams of crack cocaine. Wright picked up the bag and then continued to chase the defendant, who had proceeded to the third floor landing. Soon thereafter, the officer caught the defendant and arrested him. Upon a search of the defendant's person, the police found a plastic bag containing what was later determined to be 3.6 grams of marijuana, metal knuckles, a pager and $147.

---

[1] The tactical narcotics team had made hundreds of arrests involving narcotics, assaults and firearms in this area.

Prior to trial, the defendant moved to suppress the evidence of the drugs and metal knuckles. The trial court denied his motion because it found that the police had a reasonable and articulable suspicion to pursue the defendant after his unprovoked flight from the front of the residence. At trial, a jury found the defendant guilty. The defendant appeals from the judgment of conviction.

The sole issue on appeal is whether the trial court improperly denied the motion to suppress the evidence. The defendant claims that when Wright chased him behind the closed door of the porch, he was improperly seized in violation of article first, §§ 7 and 9, of the Connecticut constitution.[2] The defendant maintains that by closing the porch door, he exhibited a reasonable expectation of privacy and, therefore, Wright was required to have probable cause to chase him into the building. Under these circumstances, the defendant argues that the evidence obtained by the police subsequent thereto must be suppressed as the fruit of the illegal detention. We find the defendant's arguments to be meritless.

Certain seizures are reasonable under our state constitution, even in the absence of probable cause, if there is a reasonable and articulable suspicion that a person has committed or is about to commit a crime. *State* v. *Lamme*, 216 Conn. 172, 184, 579 A.2d 484 (1990); *State* v. *Anderson*, 24 Conn. App. 438, 441, 589 A.2d 372, cert. denied, 219 Conn. 903, 593 A.2d 130 (1991). "Reasonable

[2] Article first, § 7, of the constitution of Connecticut provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

Article first, § 9, of the constitution of Connecticut provides: "No person shall be arrested, detained or punished, except in cases clearly warranted by law."

and articulable suspicion is an objective standard that focuses not on the actual state of mind of the police officer, but on whether a reasonable person, having the information available to and known by the police, would have had that level of suspicion. . . . The police officer's decision . . . must be based on more than a hunch or speculation. . . . In justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." (Citations omitted; internal quotation marks omitted.) *State* v. *Gant*, 231 Conn. 43, 65, 646 A.2d 835 (1994), cert. denied, 514 U.S. 1038, 115 S. Ct. 1404, 131 L. Ed. 2d 291 (1995).

"The determination of whether a reasonable and articulable suspicion exists involves a two-part analysis: (1) whether the underlying factual findings of the trial court are clearly erroneous; and (2) whether the conclusion that those facts gave rise to such a suspicion is legally correct. See *State* v. *Cofield*, 220 Conn. 38, 44, 595 A.2d 1349 (1991). The trial court's conclusions must stand unless they are legally and logically inconsistent with the facts. . . . Id.; see *State* v. *Lasher*, 190 Conn. 259, 267, 460 A.2d 970 (1983)." (Internal quotation marks omitted.) *State* v. *Kyles*, 221 Conn. 643, 660–61, 607 A.2d 355 (1992).

Regarding the pursuit of the defendant into the enclosed porch, we conclude that the trial court properly found that Wright had a reasonable and articulable suspicion that the defendant had committed or was about to commit a crime. The defendant was observed in a high drug traffic area, standing face-to-face with a man who was holding plastic bags containing a white substance. In addition, when the two suspects observed

the unmarked police vehicle, the defendant ran away and the other man attempted to swallow the bags.[3]

We now address the defendant's argument that he exhibited a reasonable expectation of privacy in the premises and, therefore, Wright needed probable cause to open the closed porch door. "Because the constitutional prohibition against unreasonable searches and seizures affords protection only against invasions of reasonable expectations of privacy . . . our threshold inquiry is whether the defendant in fact possessed a reasonable expectation of privacy in the [premises]. . . . Absent such an expectation, the subsequent police action has no constitutional ramifications." (Citations omitted.) *State* v. *Brown*, 198 Conn. 348, 355, 503 A.2d 566 (1986).

"The determination of whether a reasonable expectation of privacy exists is fact specific and requires a two part inquiry. The first inquiry is whether the individual has exhibited an actual subjective expectation of privacy, and the second one is whether that expectation is one that society is prepared to recognize as objectively reasonable. See *State* v. *Mooney*, 218 Conn. 85, 94, 588 A.2d 145, cert. denied, 502 U.S. 919, 112 S. Ct. 330, 116 L. Ed. 2d 270 (1991). The place searched is highly relevant to this analysis because expectations of privacy in some places are afforded greater constitutional legitimacy than in others. Id., 94–95; *State* v. *Brown*, supra, [198 Conn.] 356; *State* v. *Santiago*, 26 Conn. App. 481, 602 A.2d 40 (1992)." *State* v. *DeFusco*, 27 Conn. App. 248, 259, 606 A.2d 1 (1992), aff'd, 224 Conn. 627, 620 A.2d 746 (1993).

---

[3] The defendant argues that his flight upon seeing the officers' unmarked vehicle cannot be used "to elevate 'reasonable and articulable suspicion' to 'probable cause.'" Because we conclude that the officer did not need probable cause to enter the building, we need not address this claim.

We conclude that the trial court properly found that the defendant did not have a reasonable expectation of privacy in the common areas of 264-266 Walnut Street.[4] Neither Grant nor the defendant resided at the premises. While "a person may have a sufficient interest in a place other than his home to enable him to be free in that place from unreasonable searches and seizures"; *Minnesota* v. *Olson,* 495 U.S. 91, 98, 110 S. Ct. 1684, 109 L. Ed. 2d 85 (1990); the defendant has failed to demonstrate that he had any interest whatsoever in the building. The trial court specifically found that the defendant had no property interest in the building and that the defendant had entered only "the common portions [of the building] that any visitor . . . might occupy."[5] Thus, Wright legally entered the premises with a reasonable and articulable suspicion that the defendant had committed or was about to commit a crime. We conclude that the police action did not violate

---

[4] The defendant also urges this court to adopt the doctrine of automatic standing under the state constitution. This doctrine, which confers standing on a defendant who is legitimately on the invaded premises or who has been charged with an offense of which possession of the seized item is an element, was adopted in *Jones* v. *United States,* 362 U.S. 257, 80 S. Ct. 725, 4 L. Ed. 2d 697 (1960). It was subsequently rejected in favor of the more restrictive reasonable expectation of privacy test. See *United States* v. *Salvucci,* 448 U.S. 83, 92-93, 100 S. Ct. 2547, 65 L. Ed. 2d 619 (1980); *Rakas* v. *Illinois,* 439 U.S. 128, 143, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978). Our Supreme Court abandoned the automatic standing doctrine and adopted the reasonable expectation of privacy test in *State* v. *Altrui,* 188 Conn. 161, 179 n.6, 448 A.2d 837 (1982). "Whether our Supreme Court precedent should be reexamined, discarded or changed is not for this court to decide." *State* v. *Panella,* 43 Conn. App. 76, 83, 682 A.2d 532, cert. denied, 239 Conn. 937, 684 A.2d 710 (1996). Accordingly, we decline to adopt a doctrine that our Supreme Court has explicitly rejected.

[5] Even if the defendant was a tenant in the apartment, his claim would have failed because the police entered only the common areas of the premises. "A tenant has a reasonable expectation of privacy in areas where his use is exclusive, that is, where he has the legal right to control access and to exclude others." (Internal quotation marks omitted.) *State* v. *Torres,* 36 Conn. App. 488, 500, 651 A.2d 1327, cert. denied, 232 Conn. 912, 654 A.2d 357 (1995). Here, the defendant has failed to demonstrate that he had a right to control access to the back porch or to the stairwells.

the defendant's constitutional rights. The evidence, therefore, was properly admitted at trial.

The judgment is affirmed.

In this opinion the other judges concurred.