STATE OF CONNECTICUT *v.* ERIC MAIA
(AC 15623)

Callahan, C. J., and Borden, Berdon, Norcott, Katz, Palmer and McDonald, Js.

Officially released November 11, 1997

*Louis S. Avitabile,* special public defender, for the petitioner (defendant).

*Mitchell S. Brody,* assistant state's attorney, for the respondent (state).

*Opinion*

PER CURIAM. We agree with the petitioner that the Appellate Court erroneously concluded that this court, in *State* v. *Altrui,* 188 Conn. 161, 448 A.2d 837 (1982), rejected a claim that, under the state constitution, a criminal defendant has "automatic standing" to challenge the legality of a police search. In *Altrui,* we considered the defendant's claim of automatic standing in the context of a *federal* constitutional challenge to the search. Whether the state constitution embraces the principle of automatic standing remains an open question. See *State* v. *Hill,* 237 Conn. 81, 97 n.23, 675 A.2d 866 (1996) ("we have never had occasion to consider whether our state constitution embraces the doctrine of automatic standing"). Because the issue is an important one; see id., 97–98 n.23 ("we agree that the question of whether our [state] constitution embodies the doctrine of automatic standing is a significant one"); we ordinarily would have granted certification on the question

of whether a defendant had automatic standing under the state constitution to contest an allegedly illegal search. In this case, however, it is clear that the defendant, Eric Maia, was not a tenant of the searched premises and had no reason to be there other than to use it as a sanctuary from the police. In such circumstances, it is apparent that the defendant would not be entitled to suppression of the seized narcotics even if we were to conclude that the state constitution does, in fact, embody the doctrine of automatic standing.

The defendant's petition for certification is denied.

BERDON, J., dissenting. Before the trial court, at a hearing to suppress evidence of drugs found on or near his person, the defendant, Eric Maia, argued that when the police pursued him beyond the closed door of an enclosed porch common to two apartments,[1] he had

---

[1] The trial court believed that, in order to establish standing to challenge the warrantless entry into the building and the seizure of the defendant (as well as the subsequent seizure of the drugs), it was required to find that the defendant had a "property interest" in the premises. The trial court specifically found that the police officer "did pursue the [defendant] down that alley following the [defendant's] footsteps in the recently [fallen] or still falling snow, leading into a house in which the [defendant] had no property interest whatsoever; that the [defendant] had no reasonable right of expectation of privacy in those premises and particularly in the premises that were common to the other areas. There's no indication that the [defendant] entered any of the private portions of these premises but into the common portions that any other visitor to these premises might occupy." The trial court also found that the door "was closed when Officer [Timothy] Wright went into the porch." Because the Appellate Court did not reach the issue of standing under the state constitution, it never considered whether being in an enclosed porch common to two apartments by which entry could only be made by opening a closed door or whether being charged with a crime in which possession is an essential element triggered automatic standing under the state constitution. See *Commonwealth* v. *Montanez*, 410 Mass. 290, 301, 571 N.E.2d 1372 (1991) (tenant had automatic standing to challenge search of common hallway outside his apartment); see also *State* v. *Oquendo*, 223 Conn. 635, 659–60, 613 A.2d 1300 (1992) ("Article first, § 8, of our state constitution protects citizens against the admission of evidence at trial that is obtained as a result of the unlawful activities of the police. . . . The relevant inquiry is whether the unlawful conduct of the police

standing to contest that he was seized in violation of article first, § 7, of the state constitution.[2] In other words, the defendant claimed that, under the state constitution, he is entitled to automatic standing. "Under the rule of automatic standing, a defendant may seek to suppress evidence as the fruit of an illegal search if he or she was legitimately on the invaded premises or has been charged with an offense of which possession of the seized item is an element." *State* v. *Hill*, 237 Conn. 81, 107, 675 A.2d 866 (1996) (*Norcott, J.*, dissenting). Although the automatic standing doctrine was originally embraced under the fourth amendment to the United States constitution; *Jones* v. *United States*, 362 U.S. 257, 264, 80 S. Ct. 725, 64 L. Ed. 2d 697 (1960); it was subsequently abandoned in favor of the more restrictive "reasonable expectation of privacy" test. *Rakas* v. *Illinois*, 439 U.S. 128, 143, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978) (eliminated automatic standing for defendants who are " 'legitimately on [the] premises' ");[3] *United States* v. *Salvucci*, 448 U.S. 83, 89–95, 100 S. Ct. 2547, 65 L. Ed. 2d 619 (1980) (eliminated automatic standing even though possession of seized item is element of offense charged). Nevertheless, the federal constitution

*induced* the disposal of the incriminating items [in this case the drugs] by the defendant." [Citations omitted; emphasis in original.]). Nor did the Appellate Court reach the issue under the state constitution, for the purposes of determining standing, of whether the state had the burden of proving that the defendant was not legitimately on the invaded premises. Cf. *United States* v. *Garcia*, 897 F.2d 1413, 1418 (7th Cir. 1990) (for purposes of determining standing to challenge search and seizure in automobile, which government claimed was stolen, "[t]he burden is on the government to prove by a preponderance that property is not being used with the permission of the owner").

[2] Article first, § 7, of the Connecticut constitution provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

[3] But see *Rawlings* v. *Kentucky*, 448 U.S. 98, 113, 100 S. Ct. 2556, 65 L. Ed. 2d 633 (1980) (Marshall, J., dissenting).

merely sets the floor for constitutional rights below which the states cannot go under their state constitutions. *State* v. *Marsala*, 216 Conn. 150, 160, 579 A.2d 58 (1990). "We have also, however, determined in some instances that the protections afforded to the citizens of this state by our own constitution go beyond those provided by the federal constitution, as that document has been interpreted by the United States Supreme Court." (Internal quotation marks omitted.) *State* v. *Geisler*, 222 Conn. 672, 684, 610 A.2d 1225 (1992).

The Appellate Court in this case refused to review the claim of the defendant that the state constitution requires automatic standing under the mistaken belief that this court had previously decided the issue in *State* v. *Altrui*, 188 Conn. 161, 179 n.6, 448 A.2d 837 (1982). *State* v. *Maia*, 45 Conn. App. 679, 685 n.4, 697 A.2d 707 (1997). The court in *Altrui*, however, relied on *United States* v. *Salvucci*, supra, 448 U.S. 83, which involved standing under the federal constitution. Indeed, as pointed out by Justice Norcott in his dissent in our recent case of *State* v. *Hill*, supra, 237 Conn. 107, "we have not yet addressed the question whether the doctrine of automatic standing is incorporated" under the state constitution.

The automatic standing doctrine has been adopted by several states under their state constitutions. See *Commonwealth* v. *Amendola*, 406 Mass. 592, 600, 550 N.E.2d 121 (1990) (automatic standing rule survives in Massachusetts as matter of state constitutional law in automobile and house search cases); *State* v. *Bullock*, 272 Mont. 361, 901 P.2d 61, 69 (1995) ("when the charge against the defendant includes an allegation of a possessory interest in the property which is seized, the defendant has standing to object to the prosecutorial use of that evidence"); *State* v. *Alston*, 88 N.J. 211, 228, 440 A.2d 1311 (1981) (defendant has automatic standing "if he has a proprietary, possessory or participatory

interest in either the place searched or the property seized"); *Commonwealth* v. *Sell*, 504 Pa. 46, 67–68, 470 A.2d 457 (1983) ("a person charged with a possessory offense must be accorded 'automatic standing' "); *State* v. *Wood*, 148 Vt. 479, 489, 536 A.2d 902 (1987) ("defendant need only assert a possessory, proprietary or participatory interest in . . . the area searched to establish standing" under the state constitution); *State* v. *Simpson*, 95 Wash. 2d 170, 180, 622 P.2d 1199 (1980) (state constitution's privacy clause encompasses right to assert violation of privacy in cases where defendant is charged with possession of very item which was seized); see also *State* v. *Owen*, 453 So. 2d 1202, 1204–1205 (La. 1984) (specific language in state constitution conferring standing on any person adversely affected by search confers standing on defendant, for whom no arrest warrant was issued, to contest admissibility of evidence seized in search of his trailer); *State* v. *Settle*, 122 N.H. 214, 218, 447 A.2d 1284 (1982) (language of state constitution "requires that 'automatic standing' be afforded to all persons . . . charged with crimes in which possession of any article or thing is an element").

The reasoning of these courts is persuasive. For example, the New Jersey Supreme Court pointed out that "[a]dherence to the vague 'legitimate expectation of privacy' standard, subject as it is to the potential for inconsistent and capricious application, will in many instances produce results contrary to commonly held and accepted expectations of privacy." *State* v. *Alston*, supra, 88 N.J. 226. Further, the Pennsylvania Supreme Court opined that the "United States Supreme Court's current use of the 'legitimate expectation of privacy' concept needlessly detracts from the critical element of unreasonable governmental intrusion." *Commonwealth* v. *Sell*, supra, 504 Pa. 66–67. Finally, the Vermont Supreme Court has concluded that the reasonable expectation of privacy test curtails the "function of

the judiciary by focusing on the defendant's ability to present a challenge rather than on the challenge itself, and by unduly limiting the class of defendants who may invoke the right to be free from unlawful searches and seizures." *State* v. *Wood,* supra, 148 Vt. 489.

Furthermore, even after *Rakas* v. *Illinois,* supra, 439 U.S. 128, and *United States* v. *Salvucci,* supra, 448 U.S. 83, this court questioned the wisdom of abandoning the automatic standing doctrine in *State* v. *Conger,* 183 Conn. 386, 439 A.2d 381 (1981).[4]

I would grant the defendant's petition for certification on the following issue: Under the state constitution, should the court adopt the rule of automatic standing?

Accordingly, I dissent.[5]

---

[4] "The present case illustrates a potential weakness of viewing as a matter of standing the principle that rights assured by the Fourth Amendment are personal rights, [which] . . . may be enforced by exclusion of evidence only at the [insistence] of one whose own protection was infringed by the search and seizure. . . . The preferred analysis dispenses with the distinct standing question. Instead, the issue becomes whether the challenged search or seizure violated the Fourth Amendment rights of a criminal defendant who seeks to exclude the evidence obtained during it." (Citations omitted; internal quotation marks omitted.) *State* v. *Conger,* supra, 183 Conn. 390 n.5.

[5] Moreover, the failure of the Appellate Court to address this properly raised issue and this court's denial of the petition for certification to appeal on the issue effectively deprives the defendant of his statutory right to appeal his conviction and, therefore, his right to due process. "[I]f a State has created appellate courts as an integral part of the . . . system for finally adjudicating the guilt or innocence of a defendant . . . the procedures used in deciding appeals must comport with the demands of the Due Process [Clause] . . . ." (Citation omitted; internal quotation marks omitted.) *Evitts* v. *Lucey,* 469 U.S. 387, 393, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985). Due process requires that, once a state has created a right of appeal, it must "offer each defendant a fair opportunity to obtain an adjudication on the merits of his appeal." Id., 405; *Texaco, Inc.* v. *Pennzoil Co.,* 784 F.2d 1133, 1154 (2d Cir. 1986). The failure to address an issue on appeal on the basis that the issue was previously decided, when in fact it was not, violates a defendant's right to due process.