## STATE OF CONNECTICUT *v.* ROBERT SALVATORE
### (AC 18993)

Lavery, Schaller and Vertefeuille, Js.[1]

---

[1] The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued October 29, 1999—officially released April 25, 2000

*William T. Koch, Jr.*, special public defender, for the appellant (defendant).

*Timothy J. Sugrue,* senior assistant state's attorney, with whom were *Geoffrey E. Marion,* senior assistant state's attorney, and, on the brief, *Kevin T. Kane,* state's attorney, for the appellee (state).

VERTEFEUILLE, J. The defendant, Robert Salvatore, appeals from the judgment of conviction, following a jury trial, of possession of a controlled substance with intent to sell in violation of General Statutes § 21a-277 (b), possession of a controlled substance in violation of General Statutes § 21a-279, manufacturing a controlled substance in violation of § 21a-277 (b) and possession of drug paraphernalia in violation of General Statutes § 21a-267 (a). On appeal, the defendant claims that the trial court improperly (1) found that he did not have standing to challenge the validity of the search and seizure warrant pursuant to which the marijuana was discovered, (2) applied the rule in *Franks* v. *Delaware,* 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), and denied the defendant's motion to suppress, and (3) denied the defendant's claim under *Batson* v. *Kentucky,* 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. During June and August, 1997, police were advised by three people that the defendant, who resided at the North American Wildlife Refuge at 11 Mountain View Road, East Lyme, was cultivating large amounts of marijuana on the property, that approximately fifty marijuana plants were located on the northwest corner of the property and that he kept buds from the marijuana plants in his bedroom. One of the three also brought police a marijuana leaf and several buds of marijuana from the property. On August 18, 1997, Detective Robert Bardelli of the Connecticut state police, a trained aerial marijuana spotter, and a police officer

from the East Lyme police department flew over the property in an airplane. During the flight, Bardelli readily saw numerous marijuana plants on the property. Many of the plants were planted in white buckets that were lined up in rows and they were, therefore, easily observed.

A search and seizure warrant was obtained for the property. The house, the land adjacent to it and various outbuildings were searched. Police found marijuana in the defendant's bedroom and three marijuana stalks on top of the canopy of his bed. The police also found a marijuana grow light, a notebook concerning marijuana cultivation in the defendant's bedroom closet, marijuana, a marijuana pipe and rolling papers in other locations within the house. The defendant had $1402 on his person. Paths from the house led to two groves approximately 3000 feet from the house, where police found fifty-nine marijuana plants. Three of the plants had only remnants of stalks that had been cut and removed. Other paths led to a tunnel that contained a special area equipped with reflective siding and plastic sheeting to retain warmth and humidity. The defendant was arrested on numerous drug charges.

Prior to trial, the defendant filed two motions to suppress the evidence collected during the search. After an evidentiary hearing, the trial court denied the motions in a ruling from the bench. The court found that the property was comprised of two parcels, one being the house and approximately one acre of land that was leased by the defendant from the owner, the North American Wildlife Association (association). The defendant was president of the association. The second parcel, where the fifty-nine marijuana plants were found, was adjacent to the first and was comprised of twenty-two acres of land owned by Patricia Ader, who leased the land to the association. The court found that the address, 11 Mountain View Road, referred to both parcels. The

court concluded, sua sponte, that the defendant lacked standing to challenge the warrant with respect to the twenty-two acre parcel. With respect to the house parcel, the court found that the affidavit in the search warrant application provided an adequate factual basis for the issuance of the search warrant. The court further found that the defendant had not made the necessary preliminary showing to have a *Franks* hearing and concluded that none of the alleged omissions from the search warrant affidavit was material.

I

The defendant first contends that the trial court improperly found that he lacked standing to challenge the search warrant with respect to the twenty-two acre parcel of land where the fifty-nine marijuana plants were located. The defendant urges us to adopt the rule of "automatic standing" under our state constitution. We decline to do so.

"Under the rule of automatic standing, a defendant may seek to suppress evidence as the fruit of an illegal search if he or she was legitimately on the invaded premises or has been charged with an offense of which possession of the seized item is an element." *State* v. *Hill*, 237 Conn. 81, 107, 675 A.2d 866 (1996) (*Norcott, J.*, dissenting). Automatic standing was originally the applicable rule under the federal constitution; *Jones* v. *United States*, 362 U.S. 257, 264, 80 S. Ct. 725, 4 L. Ed. 2d 697 (1960), overruled, *United States* v. *Salvucci*, 448 U.S. 83, 100 S. Ct. 2547, 65 L. Ed. 2d 619 (1980); but "was subsequently abandoned in favor of the more restrictive 'reasonable expectation of privacy' test." *Rakas* v. *Illinois*, 439 U.S. 128, 143, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978). Whether the state constitution embraces the principle of automatic standing remains an open but important question. See *State* v. *Maia*, 243 Conn. 242, 244, 703 A.2d 98 (1997).

The state correctly points out that the defendant failed to raise his claim of automatic standing before the trial court and that he failed to request in his initial brief that we review this claim under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), or the plain error doctrine. In his reply brief, the defendant claimed review under *Golding*, but failed to provide analysis of this claim.

We decline to review this claim for two reasons. First, "[c]laims on appeal that are inadequately briefed are deemed abandoned. . . . This rule applies to claims that the defendant is entitled to . . . *Golding* review." (Internal quotation marks omitted.) *State* v. *Barnett*, 53 Conn. App. 581, 599, 734 A.2d 991, cert. denied, 250 Conn. 918, 738 A.2d 659 (1999). Second, even if the defendant had adequately briefed the issue, the defendant cannot request *Golding* review for the first time in a reply brief. *State* v. *Jones*, 34 Conn. App. 807, 815, 644 A.2d 355, cert. denied, 231 Conn. 909, 648 A.2d 158 (1994). By waiting until his reply brief to make the request for review under *Golding*, the defendant deprived the state of the opportunity to brief the merits of his claim for automatic standing. It would be inappropriate for us to decide this significant question when it has been briefed by only one party. We, accordingly, decline to review the defendant's claim.

II

The defendant next claims that the trial court improperly applied the rule in *Franks* v. *Delaware*, supra, 438 U.S. 154, and denied his motions to suppress. We disagree.

The defendant contends that the affiants in the search warrant affidavit intentionally omitted three material facts from the affidavit: (1) that Bardelli's observation of the marijuana plants on the property was made from an airplane flying at altitudes between 300 and 800 feet; (2) that the so-called "concerned citizens" referred to

in the affidavit had some relationship to the association; and (3) that the property to be searched was comprised of two separate parcels of land that had different owners.

We begin by recognizing that we have a " 'longstanding rule that there is an underlying presumption of validity with respect to the affidavit supporting a warrant.' " *State* v. *Bergin*, 214 Conn. 657, 666, 574 A.2d 164 (1990). "Not all omissions, however, even if intentional, will invalidate an affidavit. . . . [A]n affiant may omit facts that he believes to be either immaterial or unsubstantiated." (Citation omitted.) Id. Before a defendant is entitled to a *Franks* hearing, he must "make a substantial preliminary showing that the information was (1) omitted with the intent to make, or in reckless disregard of whether it made, the affidavit misleading to the issuing judge, and (2) material to the determination of probable cause." Id., 666–67.

Paragraph eight of the search warrant affidavit states that Bardelli observed several marijuana plants on the property. The affidavit does not disclose that Bardelli made that observation from an airplane flying at altitudes between 300 and 800 feet. The defendant contends that by omitting this allegedly material fact from the affidavit, the police precluded the issuing judge from determining whether the observation was made as part of an illegal search.

The defendant, however, failed to satisfy the first part of the required showing for a *Franks* hearing because he presented no evidence with respect to the police officers' intent in omitting the fact that Bardelli's observation was aerial. The defendant also fails to cite any case from Connecticut or any other jurisdiction that holds that the fact that the search was aerial is a material fact that must be disclosed in the warrant affidavit. Both of the leading cases addressing the legality of aerial searches have in fact upheld the validity of these

searches. In *California* v. *Ciraolo*, 476 U.S. 207, 213, 106 S. Ct. 1809, 90 L. Ed. 2d 210 (1986), the United States Supreme Court held that observation of marijuana plants in the respondent's backyard by trained officers in an airplane at an altitude of 1000 feet did not violate the fourth amendment to the United States constitution. Three years later, that court held valid an aerial search of the contents of a greenhouse within the curtilage of the defendant's home by a helicopter flying at an altitude of 400 feet in compliance with regulations of the Federal Aviation Administration (FAA). *Florida* v. *Riley*, 488 U.S. 445, 450, 109 S. Ct. 693, 102 L. Ed. 2d 835 (1989). The defendant makes no claim in this case that the aerial search was in violation of FAA regulations. In light of *Ciraolo* and *Riley*, we cannot conclude that the fact that Bardelli's observation of the marijuana plants was aerial was a material fact that should have been disclosed in the warrant affidavit.

The defendant's claim that the affidavit improperly characterized three informants as "concerned citizens" is equally unavailing. The defendant again provided no evidence with respect to the police officers' intent in characterizing the informants as concerned citizens. The only evidence presented by the defendant at the suppression hearing was that the three informants "had something to do with the North American Wildlife Association." There was no evidence presented or claim made that the three persons in question had any ulterior motive in reporting their observations of marijuana to the police. The defendant failed to make the necessary showing that there was a material omission in the affidavit with respect to the three citizen informants.

The third alleged material omission from the affidavit was the ownership status of the property, more specifically, that it was comprised of a house owned by the association and leased to the defendant, and a second parcel of twenty-two acres owned by Ader and leased

to the association. Once again, the defendant provided no evidence with respect to the intent of the police officers in failing to include this information in the affidavit. Moreover, the defendant failed to provide any analysis as to how this information was material. Under our search warrant statute, it is possession or control of property that is relevant, not ownership. See General Statutes § 54-33a (b) (1).

The defendant failed to make the necessary preliminary showing that the affidavit was misleading due to the omission of information material to the determination of probable cause. Accordingly, we conclude that the trial court acted properly in refusing to conduct a *Franks* hearing and denying the defendant's motions to suppress.

### III

In his final claim, the defendant contends that the trial court improperly denied his claim under *Batson* v. *Kentucky*, supra, 476 U.S. 79, that the prosecution exercised a peremptory challenge in a racially biased way. We do not agree.

"In *Batson*, the United States Supreme Court set forth the guidelines for assessing a defendant's claim of purposeful, race-based peremptory challenges by the state. [Id.], 96–98. Procedurally, the facts necessary to prove the state's racially discriminatory purpose under the *Batson* test are propounded by the parties through a three step process. First, the defendant must establish a prima facie case of purposeful racial discrimination by the state. Id., 96–97. The burden then shifts to the state to propound a race-neutral purpose for seeking the removal of the venireperson. Id., 97–98. Last, the defendant may then demonstrate that the state's reasons are pretextual or insufficient. Id. The defendant carries the ultimate burden of persuading the trial court, by a preponderance of the evidence, that the jury selec-

tion process in his or her particular case was tainted by purposeful discrimination. *State* v. *Gonzalez*, 206 Conn. 391, 395, 538 A.2d 210 (1998)." (Internal quotation marks omitted.) *State* v. *Beltran*, 246 Conn. 268, 278, 717 A.2d 168 (1998). Our Supreme Court held in *State* v. *Holloway*, 209 Conn. 636, 646 n.4, 553 A.2d 166, cert. denied, 490 U.S. 1071, 109 S. Ct. 2078, 104 L. Ed. 2d 643 (1989), that in lieu of establishing a prima facie case of racially motivated jury selection by the state, the defendant need show only that he or she is a member of a cognizable racial group and that the prosecutor exercised a peremptory challenge to remove a venireperson of that race.

In the present case, the state exercised a peremptory challenge to excuse an African-American woman from the venire. Counsel for the defendant made a *Batson* challenge in connection with her dismissal.[2] The trial court asked the prosecutor his reasons for exercising a challenge. The prosecutor provided ostensibly race neutral reasons for excusing the venireperson. The court implicitly accepted those reasons by having the juror brought into the courtroom and then excusing her. Counsel for the defendant remained silent as the court excused the juror. Only after the juror was excused did defense counsel speak up, at which point he simply stated that he wanted to preserve his *Batson* challenge on the record.

The defendant contends that the court did not analyze the reasons given by the state for excusing the venireperson and further that the court did not give the defense the opportunity to demonstrate that the state's reasons were insufficient or pretextual. His complaints are without merit. After the state met its burden of

---

[2] The defendant, who is Caucasian, may nonetheless make a *Batson* challenge with respect to a juror of a different race pursuant to *Powers* v. *Ohio*, 499 U.S. 400, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991).

providing race neutral reasons for excusing the venireperson, "it was incumbent upon the defendant to persuade the trial court that the state's reasons were insufficient or pretextual." *State* v. *Beltran*, supra, 246 Conn. 280. Given the defendant's silence, "the only inference that the trial court could have drawn was that the defendant accepted the state's explanation." Id.

We reject the defendant's attempt to transfer to the trial court his responsibility to pursue his *Batson* challenge. The defendant, having requested and received a valid race neutral explanation from the state, and having made no effort to challenge that explanation, now argues that the court had a duty to do something more, sua sponte, before excusing the venireperson. The defendant offers no authority or reason for such an unorthodox application of the *Batson* test, and we decline to fashion one in the present case.

The judgment is affirmed.

In this opinion the other judges concurred.