## STATE OF CONNECTICUT *v.* CHRISTOPHER G. BERNIER
### (SC 15781)

Callahan, C. J., and Borden, Berdon, Norcott, Katz, Palmer and McDonald, Js.

---

Argued February 18—officially released August 4, 1998

*Timothy J. Sugrue*, executive assistant state's attorney, with whom were *Guy W. Wolf III*, senior assistant state's attorney, and, on the brief, *Frank S. Maco*, state's attorney, for the appellant (state).

*Joseph F. Keefe*, with whom was *A. Thomas Waterfall*, for the appellee (defendant).

*Opinion*

NORCOTT, J. The sole issue in this certified appeal is whether, pursuant to article first, § 7,[1] of the state

---

[1] Article first, § 7, of the Connecticut constitution provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

constitution, a search warrant was required to perform a gas chromatography analysis on charred wood flooring samples that lawfully had been seized from the defendant's home pursuant to a fire investigation. The trial court granted the defendant's motion to suppress the results of the test and on the state's appeal the Appellate Court affirmed the granting of the motion to suppress and the judgment of the trial court dismissing the charges against the defendant. *State* v. *Bernier*, 46 Conn. App. 350, 352, 700 A.2d 680 (1997). We reverse the judgment of the Appellate Court.

The relevant facts and procedural history are set forth in the opinion of the Appellate Court. "On November 15, 1990, the fire department of the town of Morris responded to a house fire alarm at the [home of the defendant, Christopher G. Bernier]. Firefighters and equipment arrived at the scene at 8:37 a.m. to begin fire suppression measures. At 9:11 a.m., Joel Skilton, the local fire marshal, requested the state fire marshal's assistance in conducting an investigation to determine the cause and origin of the fire. At 10:53 a.m., Detectives James Pierpont and Julio Fernandez of the state fire marshal's office, arrived at the house and met with Skilton. Pierpont was accompanied by an accelerant detecting dog. The detectives and Skilton walked around the exterior of the house inspecting the fire damage and photographing the exterior. While taking photographs, they entered the interior of the home. As a part of their investigative inspection, they checked various rooms and moved various items of debris and furniture. In the living room, they observed a low burn pattern and pour patterns on the living room floor. These indicated the presence of a flammable liquid. Thereafter, the accelerant detecting dog was brought into the house. The dog alerted the fire investigators to several pour pattern areas. Because of those findings,

four samples of charred wood flooring were taken from four different areas of the house. . . .

"The samples were placed in four separate cans and transmitted to the state police forensic science laboratory on November 16, 1990, the day after the fire. A moderate odor of petroleum was detected when the laboratory personnel opened one of the cans containing the samples. Gas chromatographic analysis revealed the presence of something similar to gasoline in three of the samples and a 'medium range petroleum distillate' in all four samples. The laboratory report was dated November 29, 1990." *State* v. *Bernier*, supra, 46 Conn. App. 352–53.

The defendant was charged with arson in the first degree in violation of General Statutes § 53a-111[2] and with arson in the third degree in violation of General Statutes § 53a-113.[3] The trial court denied the defendant's initial motion to suppress the wood samples themselves and the photographs of the fire scene that had been obtained without a warrant. "The court ruled that the warrantless seizure was legally justified . . . because it was part of an investigation of the cause and origin of the fire." Id., 352. Thereafter, relying on this court's decision in *State* v. *Joyce*, 229 Conn. 10, 639 A.2d

---

[2] General Statutes § 53a-111 provides in relevant part: "Arson in the first degree: Class A felony. (a) A person is guilty of arson in the first degree when, with intent to destroy or damage a building, as defined in section 53a-100, he starts a fire or causes an explosion, and (1) the building is inhabited or occupied or the person has reason to believe the building may be inhabited or occupied; or (2) any other person is injured, either directly or indirectly; or (3) such fire or explosion was caused for the purpose of collecting insurance proceeds for the resultant loss; or (4) at the scene of such fire or explosion a peace officer or firefighter is subjected to a substantial risk of bodily injury. . . ."

[3] General Statutes § 53a-113 provides in relevant part: "Arson in the third degree: Class C felony. (a) A person is guilty of arson in the third degree when he recklessly causes destruction or damage to a building . . . of his own or of another by intentionally starting a fire or causing an explosion. . . ."

1007 (1994),[4] the defendant filed an amended motion to suppress any and all evidence obtained as a result of the warrantless analysis of the charred flooring samples. The trial court granted the motion and then granted the defendant's subsequent motion to dismiss the charges against him. The state appealed to the Appellate Court.

The Appellate Court was divided, with the majority affirming the judgment of the trial court that a search warrant was required to conduct the testing of the flooring.[5] *State* v. *Bernier*, supra, 46 Conn. App. 372. In determining whether the results of the tests should have been suppressed, the court had to resolve: " '(1) whether [the defendant had] a reasonable expectation of privacy in the [samples], (2) whether the testing of the [samples] at the state laboratory constituted a search, and (3) if so, whether the circumstances of this case fall within a recognized exception to the warrant requirement.' " Id., 357.

The Appellate Court concluded that the defendant's expectation of privacy in the flooring samples was reasonable, relying principally on the fact that they had been taken from his home, an area traditionally afforded heightened protection from government intrusion, as well as the fact that the defendant owned the property at issue. Id., 361. The court rejected the state's claim that the reasonableness of the defendant's expectation of privacy should be informed by General Statutes

---

[1] In *State* v. *Joyce*, supra, 229 Conn. 14–15, this court determined that the warrantless gas chromatography analysis of the defendant's burned clothing, which had been cut off him in order to administer medical treatment and later was retrieved by the police pursuant to their community caretaking function, violated article first, § 7, of the state constitution because the defendant had possessed a reasonable expectation of privacy in his clothing, the testing therefore constituted a "search," and there was no applicable exception to the warrant requirement.

[5] The Appellate Court decision rested entirely upon article first, § 7, of the state constitution.

§§ 29-302, 29-310 and 29-311,[6] which require that fire

[6] General Statutes § 29-302 provides: "Investigations. The local fire marshal shall, in accordance with the provisions of section 29-311, investigate the cause, origin and circumstances of any fire or explosion within his jurisdiction, by reason of which property has been destroyed or damaged, or any person injured or killed, or any incidents which threatened any property with destruction or damage or any person with injury or death by reason of fire or explosion, and shall especially investigate whether such fire was the result of an incendiary device or the result of carelessness, design or any criminal act; and the Commissioner of Public Safety as State Fire Marshal, or the deputy fire marshal under his direction, may supervise and direct such investigation."

General Statutes § 29-310 provides in relevant part: "Investigation by State Fire Marshal of origin of fires or explosions. Order to remove combustible material or remedy flammable condition or fire hazard. Penalty. (a) The Commissioner of Public Safety as State Fire Marshal shall thoroughly investigate the cause, circumstances and origin of all fires or explosions to which his attention has been called, in accordance with the provisions of this part, by reason of which any property has been destroyed or damaged, or any person injured or killed, and shall especially examine and decide as to whether such fire was the result of carelessness, design, an incendiary device or any other criminal act. He may take the testimony under oath of any person supposed to be cognizant of or to have means of knowledge in relation to the matters as to which an examination is being made, and shall cause the same to be reduced to writing and filed in his office; and if, in his opinion, there is sufficient evidence to warrant that any person should be charged with the crime of arson or any other crime, he shall forthwith submit such evidence, together with the names of the witnesses and all other information obtained by him, to the proper prosecuting officer. He may, in any investigation, issue subpoenas for the purposes of summoning and compelling the attendance of witnesses before him to testify. He may administer oaths or affirmations to witnesses before him, and false swearing therein shall be perjury. He may, in the performance of his duties, enter, by himself or his assistants, into and upon the premises or building where any fire or explosion has occurred and premises thereto adjacent in accordance with the provisions of section 29-311. . . ."

General Statutes § 29-311 provides: "Fire investigations. Warrant requirements. The Commissioner of Public Safety as State Fire Marshal, any local fire marshal within his jurisdiction, and all duly authorized fire and police personnel acting within their jurisdiction may enter into and upon any premises or building where any fire or explosion has occurred and premises adjacent thereto, without liability for trespass or damages reasonably incurred, to conduct investigations in accordance with sections 29-302 and 29-310, under the following circumstances and conditions:

"(a) During an emergency by reason of fire or explosion on any premises, they or any of them may, without a warrant, enter such premises during

officials conduct a thorough investigation into the cause and origin of fires. Id., 364–65.[7]

The Appellate Court next concluded that the gas chromatography tests constituted a search because this court had reached a similar conclusion in *Joyce*. Id., 365. Having determined that the defendant had a reasonable expectation of privacy in the flooring samples and that the gas chromatography analysis constituted a search, the Appellate Court was left to consider only whether there existed an applicable exception to the warrant requirement. Id. The Appellate Court concluded that the exigent circumstances exception did not apply here because, at the time of the testing

the suppression of the fire or explosion or within a reasonable period of time following the suppression thereof and remain for a reasonable period of time following the suppression of the fire or explosion to: (1) Investigate in order to determine the cause and origin of the fire or explosion, (2) prevent the intentional or unintentional destruction of evidence and (3) prevent a rekindling of the fire.

"(b) After expiration of a reasonable period of time following the suppression of the fire or explosion, they or any of them shall apply in writing under oath to any judge of the Superior Court for a warrant to enter upon the premises to determine the cause and origin of the fire or explosion, if such cause or origin has not been previously determined. The application shall describe: (1) The premises under investigation, (2) the owner or occupant of the premises, if reasonably ascertainable, (3) the date and time the fire or explosion which is the subject of the investigation was reported to a police or fire agency, and (4) the date and times during which the investigative activities to determine the cause and origin of such fire or explosion are to be conducted. The judge to whom an application for a warrant is made may issue such a warrant upon finding that the requirements of this subsection have been met, and that the proposed activities are a reasonable intrusion onto the private premises to determine the cause and origin of the fire or explosion."

[7] The Appellate Court justified its rejection of the state's claim based on testimony by the local fire marshal that the cause and origin investigation had been completed on the day of the fire. *State* v. *Bernier*, supra, 46 Conn. App. 364–65. The Appellate Court reasoned that the trial court had credited that testimony and that the factual finding of the trial court was not clearly erroneous. Id., 365.

at the state laboratory, any exigency had abated.[8] Id., 366–67.

In his dissent, Judge Schaller asserted that the defendant's expectation of privacy in the charred remains of his living room floor was not one that society would recognize as reasonable in light of the statutory framework authorizing the seizure of evidence pursuant to a cause and origin investigation of a fire. Id., 373–74. Specifically, Judge Schaller argued that these statutes contemplated the subsequent testing of the evidence because "[i]t would be incongruous . . . to conclude that the legislature authorized, within the course of a cause and origin fire investigation, a seizure of investigative materials but failed to provide for the completion of the investigation by allowing the testing of those materials. . . . Clearly, the investigation authorized in §§ 29-302, 29-310 and 29-311 contemplated both the *seizure* and *testing* of those materials without the need for *additional* authorization, the original *thorough investigation and seizure* already having been authorized." (Emphasis in original.) Id., 374. As a final matter, Judge Schaller maintained that the majority's reliance on *Joyce* was misplaced because the property in *Joyce* had been seized by the police pursuant to their community caretaking function as opposed to an investigation expressly authorized by statute. Id., 375–76.

We granted the state's petition for certification to appeal from the judgment of the Appellate Court limited

---

[8] Specifically, the Appellate Court stated that "[t]he four samples of charred wood flooring were seized by the fire marshal investigators at the scene of the fire during their cause and origin investigation. . . . While the seizure of the samples can be found to have occurred due to the exigency of the on-the-scene fire investigation, the same conclusion cannot be reached as to the laboratory tests. The . . . flooring samples, once seized, were in the safe care of law enforcement personnel. . . . The exigencies of the fire scene seizure do not serve to justify the subsequent warrantless search by means of laboratory testing of the seized wood flooring." *State* v. *Bernier*, supra, 46 Conn. App. 366–67.

to the following issue: "Did the Appellate Court properly conclude that *State* v. *Joyce,* [supra, 229 Conn. 10] requires that a search warrant be obtained to test items lawfully seized as part of an investigation into the cause and origin of a residential fire?"[9] *State* v. *Bernier,* 243 Conn. 927, 701 A.2d 659 (1997).

The state argues that under article first, § 7, of the state constitution, a search warrant is not required to test the charred flooring samples because once the evidence was lawfully seized pursuant to the statutorily mandated cause and origin investigation of the fire scene, the defendant's expectation of privacy in the samples was not reasonable. The defendant concedes that a warrant was not required for the fire marshal to enter the premises and to seize the samples of the wood flooring. He contends, however, that the Appellate Court properly concluded that the defendant retained a reasonable expectation of privacy in the flooring samples. We agree with the state.

In order for the defendant to demonstrate that he had a reasonable expectation of privacy in the flooring samples: (1) he must have manifested a subjective expectation of privacy with respect to the samples; and (2) that expectation must be one that society would consider reasonable. *State* v. *Joyce,* supra, 229 Conn. 19; *State* v. *DeFusco,* 224 Conn. 627, 633, 620 A.2d 746 (1993). For the purpose of this appeal, we assume, arguendo, that the defendant sufficiently manifested a subjective expectation of privacy in the flooring samples.[10] The threshold question is, therefore, whether

---

[9] The certified question is framed only under the state constitution. The federal counterpart to article first, § 7, is the fourth amendment. Although we employ in our state constitutional analysis the same "analytical framework [that would be] used under the federal constitution"; *State* v. *Joyce,* supra, 229 Conn. 18 n.12; we also noted in *Joyce* that the result might be different under the state constitution in a case where Connecticut's citizens would consider a given expectation of privacy reasonable while the national citizenry would not.

[10] The state does not argue otherwise.

the defendant's expectation of privacy in the charred flooring samples was an objectively reasonable one for state constitutional purposes. See, e.g., *State* v. *Hill*, 237 Conn. 81, 96, 675 A.2d 866 (1996). The burden is on the defendant to prove that his expectation of privacy in the place searched was one that society would recognize as reasonable. *State* v. *Pittman*, 209 Conn. 596, 601, 553 A.2d 155 (1989). The analysis focuses on whether Connecticut citizenry "is prepared, because of its code of values and its notions of custom and civility, to give deference to a manifested expectation of privacy. . . . Under some circumstances, the determination of whether an expectation of privacy is reasonable involves a balancing of interests." (Citations omitted; internal quotation marks omitted.) *State* v. *Mooney*, 218 Conn. 85, 95–96, 588 A.2d 145, cert. denied, 502 U.S. 919, 112 S. Ct. 330, 116 L. Ed. 2d 270 (1991). The determination of "what Connecticut citizens would consider reasonable in the present day"; *State* v. *DeFusco*, supra, 635; "is made on a case-by-case basis . . . [and] involves a fact-specific inquiry into all the relevant circumstances." (Citations omitted; internal quotation marks omitted.) *State* v. *Joyce*, supra, 20.

We first address the state's claim that the statutory framework authorizing the cause and origin investigation embodies Connecticut's code of values and informs the reasonableness of the defendant's expectation of privacy. The state argues that because the statutes expressly authorize both the entry of fire officials into any premises where a fire has occurred for investigative purposes as well as the seizure of evidence, they suggest that the defendant's expectation of privacy in the flooring samples was not one that Connecticut citizens would consider reasonable.

We have recognized that "statutes may . . . help to define the contours of constitutional rights . . . ." (Citations omitted.) *State* v. *Miller*, 227 Conn. 363, 375,

630 A.2d 1315 (1993). Because "[l]egislative enactments are expressions of this state's public policy"; id.; they may be relevant to the resolution of whether the defendant's expectation of privacy is one that Connecticut citizens would recognize as reasonable. We previously have considered the presence of state regulation in determining whether a defendant's expectation was one that Connecticut citizens would consider reasonable in *State* v. *DeFusco,* supra, 224 Conn. 627. The issue in *DeFusco* was "whether the defendant's expectation of privacy in garbage placed at the curb for collection was objectively reasonable under the circumstances"; id., 635; such that a search warrant was required under article first, § 7, of the state constitution, to conduct a search and seizure. We were persuaded that the defendant's expectation of privacy in the refuse was not objectively reasonable, in large part, by the existence of statutes regulating garbage collection, disposal and recycling. Id., 636–38. Because these statutes authorized access to the garbage by various individuals, they were "useful in our determination" that the defendant's expectation of privacy in curbside garbage was not one that Connecticut citizens would recognize as reasonable. Id., 636 n.16.

We consider *DeFusco* to be instructive in our resolution of this appeal. Similar to *DeFusco,* we are presented in this case with a statutory scheme that represents the declared public policy of this state, albeit with regard to fire investigations, that informs our determination of Connecticut citizenry's attitudes and expectations regarding privacy interests. Determining the cause of a fire is such a compelling public interest that fire marshals, both state and local, are required under state law to conduct an investigation. These statutes permit state officials to enter into private premises without a warrant and seize evidence. We conclude that Connecticut citizens have assented, by virtue of §§ 29-302, 29-310

and 29-311, to the testing of fire scene evidence without the warrant protection afforded by article first, § 7, of the state constitution.

In addition, we agree with the state that the presence of this statutory framework informs the objective reasonableness of the defendant's expectation of privacy in the fire scene evidence taken from his home because it encompasses the gas chromatography analysis.[11] The determination of the presence of an accelerant in the flooring and its identity were essential to ascertain the cause of the fire. We conclude that once the charred flooring samples were lawfully seized pursuant to the cause and origin investigation statutes, the defendant no longer possessed an expectation of privacy in them that Connecticut citizens would recognize as meriting constitutional protection. Accord *State* v. *Moretti*, 521 A.2d 1003 (R.I. 1987) (under fourth amendment, no warrant necessary to test charred floorboards because no reason to recognize remaining privacy interests in objects seized pursuant to cause and origin investigation).

The defendant maintains, however, that the protection traditionally accorded to one's privacy interests in the home extends to the wood flooring samples. It is well established that "[t]he sanctity of the home has a well established place in our jurisprudence." *State* v. *Geisler*, 222 Conn. 672, 687, 610 A.2d 1225 (1992); see *State* v. *Brown*, 198 Conn. 348, 356–57, 503 A.2d 566 (1986) ("[p]rivacy expectations are normally highest

[11] The trial court concluded that the cause and origin investigation was completed on the day of the fire. In the Appellate Court, both the majority; *State* v. *Bernier*, supra, 46 Conn. App. 364–65; and Judge Schaller in his dissent; id., 372–73; considered the conclusion of the trial court a finding of fact. We are persuaded, however, that the determination as to whether the gas chromatography analysis is within the scope of the legislatively mandated cause and origin investigation is a question of statutory construction and therefore a question of law.

and are accorded the strongest constitutional protection in the case of a private home"). It is axiomatic that the right to be secure in one's home is central to the prohibition of article first, § 7, of the state constitution, against unreasonable intrusions by the state. Unlike the Appellate Court, however, we conclude that the particular location from which the material was taken from, alone, is not dispositive of the constitutional protection afforded. The heightened protection of article first, § 7, generally accorded to a private home is to prevent state officials from "thrust[ing] themselves into a home . . . ." *State* v. *Geisler*, supra, 690. This concern is not present under the circumstances of this case. The intrusion of the state already had occurred when the fire officials legitimately entered the defendant's home to conduct an investigation, inspected the premises and subsequently seized evidence. Once the flooring samples were removed from the defendant's home, the sanctity of the home already had been compromised and the reasonable expectations of privacy thereafter were necessarily diminished. We reject the defendant's contention that, in essence, his burned flooring merits a higher expectation of privacy than that accorded to his home.

The defendant argues, in addition, that our decisions in *Joyce, Mooney* and *Miller* "hold that the initial lawful seizure does not validate the subsequent warrantless search . . . ." He contends that, despite the lawful seizure, he still retained an expectation of privacy in the floor samples. We disagree with the defendant that these cases support the notion that a search warrant was required.

In *Joyce*, for safekeeping the police collected clothing that had been cut from the defendant and left by the side of the road when he was taken to the hospital. After the defendant became a suspect, the police transmitted the clothing to the state forensic laboratory for

testing. *State* v. *Joyce,* supra, 229 Conn. 14. This court concluded that the defendant retained a reasonable expectation of privacy in his clothing and that a search warrant was required under the state constitution to submit the clothing to a gas chromatography analysis. Id., 27.

Although both *Joyce* and the present case involve a gas chromatography analysis of certain materials, the defendant's reliance on *Joyce* is misplaced. First, in *Joyce,* the police collected the defendant's clothing to safeguard it pursuant to their community caretaking function.[12] Id., 14. In contrast, in the present case, the flooring was seized as evidence pursuant to an investigation. The defendant's expectations of privacy with regard to material seized as evidence as part of an investigation are diminished as compared to the situation in *Joyce* where the material was taken for safekeeping. Once a defendant's personal property has been legitimately seized for investigatory purposes, the major portion of his privacy expectations has been legitimately breached, and the investigation ordinarily will legitimately include chemical testing of the property, without the necessity of an intervening warrant. Second, the nature and degree of personal information that could be revealed by the evidence distinguishes *Joyce* from the present case. The defendant bears the burden of proving that his privacy interests in the place searched are reasonable. *State* v. *Brown,* supra, 198 Conn. 356. We concluded in *State* v. *Joyce,* supra, 229

---

[12] "The community caretaking function serves several interests, including protecting the owner's personal property, deterring false claims against the police, protecting the police from danger potentially posed by the property, and inhibiting careless handling of articles taken from arrested persons." *State* v. *Bernier,* supra, 46 Conn. App. 367. Custody pursuant to a community caretaking function is "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady* v. *Dombrowski,* 413 U.S. 433, 441, 93 S. Ct. 2523, 37 L. Ed. 2d 706 (1973).

Conn. 23, that the defendant had a reasonable expectation of privacy in the "invisible and odorless chemicals present in his clothing" that might be revealed by the gas chromatography. Expert testimony was presented in *Joyce* that the test was designed to detect the presence and identity of many organic compounds by heating the clothing and analyzing the resultant vapors. Id., 24. The highly private facts about an individual that are contained in his clothing that might be revealed by the test were evidenced by the fact that the machine detected the presence of an organic material in the defendant's underwear that was not an accelerant. Id., 24 n.16. Although the trial court in the present case stated that testing of the floor "would reveal personal and private information about that person or family; for example, signs of incontinence, or use of various fluids or substances"; it relied exclusively on *Joyce* as authority that the gas chromatography could reveal such personal information in flooring without exploring the extent and likelihood of such information being revealed and determining if it was sufficient to warrant the protection of article first, § 7, of the state constitution. The defendant adduced no evidence as to the type of private information the test conducted on the flooring could or did reveal about him. We are unpersuaded by the defendant's contention that our conclusion in *Joyce* that the defendant in that case had a reasonable expectation of privacy in the information the gas chromatography might reveal from his clothing necessarily means that the same type of private facts might be revealed by the use of this test on the defendant's flooring. We decline to impute to the defendant's burned flooring the degree and nature of personal information contained in one's clothing.[13] The flooring samples, as compared to

---

[13] That the flooring would not necessarily reveal the same degree of personal information is evidenced by the fact that one sample was retrieved from *underneath* the house because the floor had burned completely through.

the clothes in *Joyce*, are such an unlikely repository of personal information as to render the defendant's expectation of privacy unreasonable.

*Mooney* and *Miller* are also inapposite because the nature of the privacy interests at issue are distinguishable. In *Mooney*, we considered whether the defendant, a homeless man, had a reasonable expectation of privacy under the fourth amendment to the federal constitution in certain closed containers located in the area under a bridge abutment where he was living. *State* v. *Mooney*, supra, 218 Conn. 86. Although the determination presented a "close question"; id., 98; we concluded that a search warrant was required because "[o]ur society has traditionally afforded a high degree of deference to expectations of privacy in closed containers because such an area is normally intended as a repository of personal effects." Id., 111.

The defendant in *Miller* challenged as violative of article first, § 7, of the state constitution, a warrantless automobile search supported by probable cause but conducted after the automobile had been impounded and towed to the police department. *State* v. *Miller*, supra, 227 Conn. 365. We concluded that, contrary to federal precedent, under our state constitution a warrant was required to search the automobile because "[o]ur constitutional preference for warrants reflects a goal of protecting citizens from unjustified police intrusions by interposing a neutral decisionmaker between the police and the object of the proposed search." Id., 382.

As in *Joyce*, our decisions in *Mooney* and *Miller* involved factual circumstances where the breadth of personal information that could be revealed by the particular area searched was such that an expectation of privacy was reasonable. In contrast, in the present case, the nature and extent of the private facts that possibly

might be revealed by a piece of charred flooring simply are far less than the nature and extent of the private information that may be gleaned from clothing, a closed duffel bag and an automobile trunk. "[E]xpectations of privacy in some places are afforded greater legitimacy than in others." *State* v. *Brown*, supra, 198 Conn. 356. Furthermore, in *Miller* we simply declined to extend the scope of the automobile exception to our warrant requirement to a situation that was based on a fiction and that had exceeded the purpose of the exception. *State* v. *Miller*, supra, 227 Conn. 384–85. Finally, absent in *Joyce, Mooney* and *Miller* is a statutory scheme that, as in *DeFusco*, specifically authorizes certain intrusions by the state and is highly probative of the fact that the citizenry of Connecticut would not consider the defendant's expectation of privacy reasonable.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court and remand the case to that court with direction to deny the defendant's motions to suppress and to dismiss the charges and for further proceedings.

In this opinion BORDEN, KATZ and PALMER, Js., concurred.

CALLAHAN, C. J., concurring. I agree with the result reached in the majority opinion. I write separately, however, because I believe that the case is less complicated than indicated. The complexity stems, no doubt, from trying to reconcile this case with our opinion in *State* v. *Joyce*, 229 Conn. 10, 639 A.2d 1007 (1994), wherein the majority concluded that article first, § 7, of the Connecticut constitution required the police to obtain a warrant before testing the charred remains of an arsonist's clothing that had been cut from him and left by the roadside during treatment for burns he suffered in committing the arson.

Taking into consideration both the statutes authorizing "thorough" cause and origin investigations when there has been a fire, especially with regard to whether the fire resulted from criminal activity; General Statutes §§ 29-302 and 29-311; and the compelling public interest in quickly ascertaining the causes of fires, I believe that we should adopt a bright line rule that whenever law enforcement personnel lawfully seize evidence from a fire scene, they may cause that evidence to be tested subsequently for the presence of an accelerant without first obtaining a warrant. It seems only logical that if the authorities are lawfully in possession of property, at least property not in a sealed container, a suspect has lost any reasonable expectation of privacy in that property. See *State* v. *Joyce*, supra, 229 Conn. 30 (*Callahan, J.*, dissenting). Because our opinion in *Joyce* contravenes that logic, and because the coexistence of the majority opinions in *Joyce* and in this case will cause needless confusion for the trial courts in future arson cases, I would explicitly overrule *State* v. *Joyce*, supra, 229 Conn. 10.

MCDONALD, J., concurring. In this case, the officers legally seized, under statutory authority, burned floorboards at a fire scene open to the public authorities to fight a fire and determine the fire's origin forthwith.

Where evidence is so legitimately in the hands of the police, there is no reason under the federal or state constitution that reliable and highly relevant evidence of laboratory testing should be barred in the prosecution of any crime. In this case, the officers removed the floorboards pursuant to their explicit and valid statutory authority to investigate and quickly determine the origin of a fire. General Statutes § 29-311 (a); see also *Michigan* v. *Tyler*, 436 U.S. 499, 510–11, 98 S. Ct. 1942, 56 L. Ed. 2d 486 (1978); *State* v. *Guertin*, 190 Conn. 440, 448, 461 A.2d 963 (1983). Once the legal evidence

is in the possession of the police, a further search warrant for laboratory testing should not be required any more than a further warrant should be required for the police to examine the evidence, visually or otherwise. See *United States* v. *Edwards*, 415 U.S. 800, 803–804, 94 S. Ct. 1234, 39 L. Ed. 2d 771 (1974); *People* v. *Hadley*, 179 Ill. App. 3d 152, 155–57, 534 N.E.2d 395, leave to appeal denied, 125 Ill. 2d 570, 537 N.E.2d 814 (1989); *People* v. *Deacon*, 130 Ill. App. 3d 280, 289–90, 473 N.E.2d 1354, cert. denied, 474 U.S. 921, 106 S. Ct. 253, 88 L. Ed. 2d 260 (1985); *Bastin* v. *State*, 510 N.E.2d 229, 231 (Ind. App. 1987). To the extent that *State* v. *Joyce*, 229 Conn. 10, 639 A.2d 1007 (1994), may be to the contrary in requiring a search warrant for laboratory testing, I agree with Chief Justice Callahan that it should be overruled.

This case and *Joyce* illustrate the uncertain and confusing state of the law of search and seizure that daily affects effective law enforcement.[1] They also illustrate the unwisdom of our decision in *State* v. *Marsala*, 216 Conn. 150, 579 A.2d 58 (1990), in which we held that even should the police search and seize evidence in objectively reasonable good faith, the exclusionary rule is applied. Id., 167, 171. The rationale of the exclusionary rule is that it will deter police misconduct with respect to privacy rights. As the United States Supreme Court pointed out in *United States* v. *Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984), "[the exclusionary rule] cannot be expected, and should not be applied, to deter objectively reasonable law enforcement activity." Id., 919. The Supreme Court has also observed that the exclusionary rule "exacts an enormous price from

---

[1] In *Joyce*, the Appellate Court upheld the admission of the test results by a two to one vote; *State* v. *Joyce*, supra, 229 Conn. 12; and we reversed the Appellate Court by a vote of five to two. Id., 28. In this case, the Appellate Court held that the testing results should be suppressed in a two to one decision. *State* v. *Bernier*, supra, 46 Conn. App. 552.

society and our system of justice . . . ." *Segura* v. *United States*, 468 U.S. 796, 816, 104 S. Ct. 3380, 82 L. Ed. 2d 599 (1984).

In this case, the officers, in obtaining the evidence and submitting it to the laboratory, acted in objectively reasonable reliance on a valid statute. Cf. *Illinois* v. *Krull*, 480 U.S. 340, 360, 107 S. Ct. 1160, 94 L. Ed. 2d 364 (1987).

I would overrule *Marsala* to the extent that it may require suppression of evidence gathered by the police in objectively reasonable good faith.

Accordingly, I concur in the reversal of the Appellate Court.

BERDON, J., dissenting. I disagree with the majority opinion because, in my view, General Statutes § 29-311[1] must be interpreted as authorizing warrantless searches and seizures only under *exigent* circumstances. I believe that such an interpretation of § 29-311 is mandated by article first, § 7, of the Connecticut constitution and by this court's decisions in *State* v. *Miller*, 227 Conn. 363, 630 A.2d 1315 (1993), and *State* v. *Joyce*, 229 Conn. 10, 639 A.2d 1007 (1994), cases from which I find this case to be indistinguishable. In this case, as in *Miller* and *Joyce*, the circumstances that justified the initial search and seizure of the defendant's home—the fire in his home—had long since ceased to exist when the search at issue was executed. Because I believe that the

---

[1] General Statutes § 29-311 (a) provides: "During an emergency by reason of fire or explosion on any premises, [the commissioner of public safety as state fire marshal, any local fire marshal within his jurisdiction, and all duly authorized fire and police personnel acting within their jurisdiction] may, without a warrant, enter such premises during the suppression of the fire or explosion or within a reasonable period of time following the suppression thereof and remain for a reasonable period of time following the suppression of the fire or explosion to: (1) Investigate in order to determine the cause and origin of the fire or explosion, (2) prevent the intentional or unintentional destruction of evidence and (3) prevent a rekindling of the fire."

defendant had an objectively reasonable expectation of privacy in the floorboards of his home and the warrantless search of those floorboards by the state at the chromatography laboratory did not occur under exigent circumstances, I would affirm the judgment of the Appellate Court.

Article first, § 7, of the Connecticut constitution grants to the citizens of Connecticut protection from unreasonable warrantless searches of their persons and their private property. It is well established that "searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton* v. *New York*, 445 U.S. 573, 586, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980); *State* v. *Gant*, 231 Conn. 43, 63, 646 A.2d 835 (1994), cert. denied, 514 U.S. 1038, 115 S. Ct. 1404, 131 L. Ed. 2d 291 (1995). "[A]bsent consent to entry or exigent circumstances, a judicial determination of probable cause must stand in between the police and the door of a person's home, whether the object of an entry is to search and seize or to arrest." (Internal quotation marks omitted.) *State* v. *Hill*, 237 Conn. 81, 92 n.17, 675 A.2d 866 (1996); *State* v. *Ruth*, 181 Conn. 187, 193, 435 A.2d 3 (1980). When a search occurs without a warrant, the state bears the burden of demonstrating that the circumstances surrounding the warrantless search fit within one of the limited exceptions to the warrant requirement so as to justify the failure to obtain a warrant. *State* v. *Blades*, 225 Conn. 609, 618, 626 A.2d 273 (1993). In determining whether the circumstances fit within an exception to the warrant requirement, the exceptions themselves are narrowly construed. *State* v. *Badgett*, 200 Conn. 412, 428–29, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986).

The majority concludes that the defendant was not entitled to the protections afforded by article first, § 7, with respect to the floorboards removed from his home

because, in its estimation, the defendant's subjective expectation of privacy in the floorboards was unreasonable. I disagree. "Whether a defendant's actual expectation of privacy . . . is one that society is prepared to recognize as reasonable involves a fact-specific inquiry into all the relevant circumstances." (Internal quotation marks omitted.) *State* v. *Hill*, supra, 237 Conn. 92. Upon review, this court must accept the trial court's factual conclusions unless those factual findings are legally or logically inconsistent with the facts found or involve an erroneous interpretation of the law. *Newbury Commons Ltd. Partnership* v. *Stamford*, 226 Conn. 92, 100, 626 A.2d 1292 (1993). In this case, the trial court determined that the defendant's expectation of privacy in the floorboards removed from his home was a reasonable one, and the Appellate Court affirmed that decision.

The conclusion reached by the trial court and the Appellate Court, that the defendant's expectation of privacy in the floorboards removed from his home was reasonable, is entirely consistent with our jurisprudence in this area. Previously, we have concluded that important factors to be considered in deciding whether an expectation of privacy was reasonable include: (1) the place from which the item searched was removed; (2) ownership of the item searched; and (3) the degree of deference that society affords to expectations of privacy with respect to the item searched in light of its ownership and the place from which it was removed. *State* v. *Mooney*, 218 Conn. 85, 94–96, 588 A.2d 145, cert. denied, 502 U.S. 919, 112 S. Ct. 330, 116 L. Ed. 2d 270 (1991). In this case, the floorboards were removed from the defendant's home, and the defendant was the owner of the floorboards. Society customarily affords a very high degree of deference to expectations of privacy within the home. See *State* v. *DeFusco*, 224 Conn. 627,

634, 620 A.2d 746 (1993) (state constitution affords highest protection against state invasion into home); *State* v. *Guertin*, 190 Conn. 440, 447, 461 A.2d 963 (1983) (violation of right to privacy in home is "chief evil" against which fourth amendment is directed). Although the majority concludes that floorboards are unlikely repositories for private information, the fact is that the chemical analysis of the floorboards was capable of revealing a significant amount of private information about the defendant and other occupants of his home, in that it could reveal the presence of substances such as pharmaceuticals, alcohol and bodily fluids. In addition, other factors that might have affected the reasonableness of the defendant's expectation of privacy in the floorboards, such as evidence that the floorboards had been discarded or abandoned, were not present in this case. Indeed, in that regard, the expectation of privacy is even stronger in this case than it was in *State* v. *Joyce*, supra, 229 Conn. 21, wherein we found that a warrant was required by the state constitution with respect to the defendant's clothing that had been removed from his person and left by the roadside. It is, therefore, unquestionable, in my view, that the defendant's expectation of privacy in the floorboards of his home was entirely reasonable.

Once it has been determined that a legitimate privacy interest exists with respect to property that has been subjected to a warrantless search, it is incumbent upon the state to demonstrate that the warrantless search was justified because it fit within one of the exceptions to the warrant requirement. In this case, the state argued that the warrantless search of the defendant's property was justified in light of § 29-311. That section authorizes fire and police personnel to enter private property and investigate the causes and origins of a fire without a warrant, on the basis of the exigent circumstances presented by the fire and in the interest of public safety.

Pursuant to that section, the fire investigators in this case were properly authorized to investigate the fire scene without a warrant and, further, I will assume for the purposes of this case, were properly authorized to seize the defendant's floorboards on the basis of the urgent need to preserve that evidence from damage, or from being tampered with, lost or stolen. In determining whether any further warrantless search or seizure was constitutional, however, it is critical to bear in mind that § 29-311 is based upon the exigent circumstances exception to the warrant requirement and, therefore, the contours of that exception are controlling.

The exigent circumstances exception obviates the need for a warrant only in those limited "situations in which law enforcement agents will be unable or unlikely to effectuate an arrest, search or seizure, for which probable cause exists, unless they act swiftly and without seeking prior judicial authorization." *United States* v. *Campbell*, 581 F.2d 22, 25 (2d Cir. 1978). "[W]hen there are reasonable alternatives to a warrantless search, the state has not satisfied its burden of proving exigent circumstances." (Internal quotation marks omitted.) *State* v. *Gant*, supra, 231 Conn. 68. Furthermore, when a warrantless search is justified by exigent circumstances, it "must be strictly circumscribed by the exigencies which justify its initiation."[2] (Internal quotation marks omitted.) *Tierney* v. *Davidson*, 133 F.3d 189, 197 (2d Cir. 1998); *State* v. *Miller*, 29 Conn. App. 207, 229, 614 A.2d 1229 (1992), aff'd, 227 Conn. 363, 630 A.2d 1315 (1993).

In *Miller*, on appeal to this court, we considered whether the automobile exception to the warrant

---

[2] The same rule applies with respect to warrantless searches and seizures justified under the emergency exception—a specific type of exigent circumstance. When "the police act without a warrant under the emergency exception, once that emergency ceases to exist, the police must terminate their intrusive conduct." *State* v. *Joyce*, supra, 229 Conn. 27; *State* v. *Geisler*, 222 Conn. 672, 695–96, 610 A.2d 1225 (1992).

requirement should be extended to allow a warrantless search of an automobile that had been removed from the highway and securely impounded at the police station. This court concluded that such an extension of the automobile exception would be violative of article first, § 7, of the state constitution. The basis for our decision was the fact that once the automobile was impounded in a secure area, the exigencies inherent in a roadside search would have evaporated, and there no longer would exist any justification for not seeking authorization for the search from a neutral and detached magistrate. This court further articulated the basis for its decision as follows: "We tolerate the warrantless on-the-scene automobile search *only* because obtaining a warrant would be impracticable in light of the inherent mobility of automobiles and the latent exigency that that mobility creates. . . . If the impracticability of obtaining a warrant no longer exists, however, our state constitutional preference for warrants regains its dominant place in that balance, and a warrant is required." (Citation omitted; emphasis in original.) *State* v. *Miller*, supra, 227 Conn. 384–85.

Similarly, in *State* v. *Joyce*, supra, 229 Conn. 27, we concluded that a warrant was required in order to perform the same gas chromatography analysis that was performed in this case on the defendant's clothing that had been removed from his person by paramedics and left by the roadside near the scene of a fire at his parent's home. The defendant in *Joyce* initially was not suspected of having been responsible for causing the fire, and his clothes were placed into police custody merely for safekeeping. Id., 13–14. When the defendant later became a suspect, the police sent his clothing to the state forensic laboratory for chemical testing without first obtaining a warrant to perform that search. Id., 14. We concluded that the search was violative of our state constitution because the circumstances did not fall

within the exigency exception or any other exception to the warrant requirement. Id., 27.

Likewise, in this case, the subsequent search of the floorboards through chromatographic analysis required that a warrant first be obtained. By the time the subsequent search was performed, the floorboards had been removed and placed securely into police custody, and were no longer in any danger of being lost, stolen, tampered with or destroyed. There was, therefore, no longer any justification for the failure to obtain a warrant prior to searching them. As we previously have stated, when a warrantless search is justified by exigent circumstances, that search "must be strictly circumscribed by the exigencies which justify its initiation" (internal quotation marks omitted); *Tierney* v. *Davidson*, supra, 133 F.3d 197; *State* v. *Miller*, supra, 29 Conn. App. 229; and if reasonable alternatives to the warrantless search existed, the state will not have satisfied its burden of proving exigent circumstances. *State* v. *Gant*, supra, 231 Conn. 68. The fact that no exigency existed in this case and the evidence was secure in the custody of police negated any possibility that the warrantless search could be justified.

Moreover, § 29-311 offers no cure for the lack of exigent circumstances in this case. Although that statute authorizes fire and police personnel to investigate, without a warrant, the causes and origins of a fire and to act to prevent the destruction of evidence for a reasonable amount of time following the suppression of a fire, the statute cannot be interpreted in such a way as to render it violative of rights guaranteed by the state constitution. Consequently, the section must be interpreted as a codification of the exigent circumstances exception to the warrant requirement. Because that exception clearly is bounded by the exigencies upon which it is based, so too is § 29-311.

Chief Justice Callahan, in his concurring opinion, intimates that this case is indistinguishable from *Joyce* and I agree. I disagree, however, with the Chief Justice's suggestion that, in effect, we overrule *Joyce* by adopting a "bright line" rule that whenever law enforcement personnel lawfully seize evidence from a fire scene, that evidence may be tested subsequently for the presence of an accelerant without first obtaining a search warrant. One factor that distinguishes a democracy from a police state is respect for the fundamental right to privacy. That respect requires that we place the warrant requirement between the police and the privacy of each citizen when circumstances do not fit within any established exception. "Our [state] constitutional preference for warrants reflects a goal of protecting citizens from unjustified police intrusions by interposing a neutral decisionmaker between the police and the object of the proposed search." *State* v. *Miller*, supra, 227 Conn. 382.

In my view, *Miller* and *Joyce* require the same outcome in this case as was reached in those cases. Simply put, a warrant was required because "[there] was a search; there was no warrant; the owner had not consented; and there were no exigent circumstances." *Walter* v. *United States*, 447 U.S. 649, 654, 100 S. Ct. 2395, 65 L. Ed. 2d 410 (1980).

Accordingly, I dissent.