## STATE OF CONNECTICUT *v.* JOHN MITCHELL
## (AC 18366)

O'Connell, C. J., and Spear and Dupont, Js.

Argued September 13, 1999—officially released February 8, 2000

*William S. Palmieri*, for the appellant (defendant).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Amy Sedensky*, deputy assistant state's attorney, for the appellee (state).

*Opinion*

O'CONNELL, C. J. The defendant, John Mitchell, appeals from the judgment of conviction rendered on the trial court's acceptance of his conditional plea of nolo contendere[1] to the charge of carrying a pistol or a revolver on his person in violation of General Statutes § 29-35 (a). The defendant claims that the trial court improperly (1) refused to grant his motion to suppress the evidence and (2) determined that the seizure was a permissible *Terry* stop.[2] We affirm the judgment of the trial court.

The following facts are relevant to this appeal. Shortly after midnight, on the night of the arrest, the arresting New Haven police officer received a dispatch from his sergeant informing him that the police had received a number of telephone calls complaining of gunshots. Shortly thereafter, the officer noticed the defendant riding his bicycle at high speed and began following him in his police cruiser. The officer observed the defendant, on several occasions, remove his right hand from the handlebars, reach across his stomach to his left side and then return it to the handlebars. At that time, the officer was uncertain as to the defendant's purpose, but he later concluded that the defendant could have

---

[1] The defendant's plea was conditioned on his right to appeal the denial of his motion to suppress evidence in accordance with General Statutes § 54-94a.

[2] *Terry* v. *Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

been checking on the security of a weapon being carried on his left side.

Subsequently, the officer observed the defendant drop his bicycle in front of a multifamily dwelling and run inside. He characterized the defendant's behavior as moving fast, running and fleeing. As the defendant ran up the stairs, the officer noticed a bulge on the defendant's left side. The officer followed him into the apartment building, up its common stairway and then into the private residence of a friend's mother. Once in the apartment, the police officer seized the defendant around the waist and found a handgun in a holster strapped to his side.

The defendant filed a pretrial motion to suppress the evidence of the handgun. After the hearing, the trial court denied the motion, and the defendant entered a conditional plea of nolo contendere. The trial court accepted the plea and rendered the judgment in accordance therewith.

I

The defendant argues that the police officer unlawfully entered the apartment without a warrant and, therefore, the evidence resulting from the subsequent seizure must be suppressed because it was obtained in violation of his rights guaranteed by the United States[3] and Connecticut[4] constitutions. The defendant relies on *Steagald* v. *United States*, 451 U.S. 204, 101 S. Ct. 1642,

[3] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., amend. IV.

[4] "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation." Conn. Const., art. I, § 7.

68 L. Ed. 2d 38 (1981), for the principle that an officer cannot search the premises of a third party without a warrant.[5] Absent exigent circumstances or consent, the police, even armed with an arrest warrant, cannot search for a subject in the home of a third party, without first obtaining a search warrant directing entry. Id., 211–16. A close examination of *Steagald* does not support the defendant's argument because the circumstances in *Steagald* are not the same as those in the present case. In *Steagald*, a resident's rights were implicated as a result of a search of the resident's premises for a third party. Furthermore, *Steagald*, in dicta, actually supports a position contrary to that of the defendant.[6]

The defendant's first issue raises two questions: (1) does the defendant have standing to invoke the fourth amendment and, if he does, (2) were those rights violated? The trial court correctly focused first on the issue of standing and concluded that the defendant lacked standing to assert the fourth amendment. Accordingly, the trial court denied the defendant's motion to suppress.

---

[5] *Steagald* clearly states that "the narrow issue before us is whether an arrest warrant—as opposed to a search warrant—is adequate to protect the Fourth Amendment interests of persons not named in the warrant, when their homes are searched without their consent and in the absence of exigent circumstances." *Steagald* v. *United States*, supra, 451 U.S. 212.

[6] "[T]he house of any one is not a castle or privilege but for himself, and shall not extend to protect any person who flies to his house, or the goods of any other which are brought and conveyed into his house, to prevent a lawful execution, and to escape the ordinary process of law; for the privilege of his house extends only to him and his family, and to his own proper goods. [*Semayne's Case*, 5 Co. Rep. 91a, 92b–93a. 77 Eng. Rep. 194, 198 (K. B. 1603)]. The common law thus recognized, as have our recent decisions, that rights such as those conferred by the Fourth Amendment are personal in nature, and cannot bestow vicarious protection on those who do not have a reasonable expectation of privacy in the place to be searched. See *United States* v. *Salvucci*, 448 U.S. 83 [100 S. Ct. 2547, 65 L. Ed. 2d 619] (1980); *Rakas* v. *Illinois*, 439 U.S. 128 [99 S. Ct. 421, 58 L. Ed. 2d 387] (1978)." (Internal quotation marks omitted.) *Steagald* v. *United States*, supra, 451 U.S. 219.

The trial court correctly determined that standing was the threshold issue. The United States Supreme Court in *United States* v. *Salvucci*, 448 U.S. 83, 100 S. Ct. 2547, 65 L. Ed. 2d 619 (1980), overruled *Jones* v. *United States*, 362 U.S. 257, 80 S. Ct. 725, 4 L. Ed. 2d 697 (1960), thereby eliminating the rule that defendants had automatic standing to challenge the legality of a search that produced evidence against them. Under the automatic standing rule, a defendant had the right to challenge the legality of a search without first showing that he had a reasonable expectation of privacy that was violated by the search. *Salvucci* held that a defendant must first establish a reasonable expectation of privacy in the premises before he may assert that his fourth amendment rights have been violated by improper intrusion into those premises. *United States* v. *Salvucci*, supra, 93.

Our Supreme Court adopted *Salvucci* in *State* v. *Altrui*, 188 Conn. 161, 179 n.6, 448 A.2d 837 (1982). In *State* v. *Hill*, 237 Conn. 81, 92, 675 A.2d 866 (1996), our Supreme Court reconfirmed its adoption of *United States* v. *Salvucci*, supra, 448 U.S. 83, stating that "[t]he touchstone to determining whether a person has standing to contest an allegedly illegal search is whether that person has a reasonable expectation of privacy in the invaded place. *Rakas* v. *Illinois*, 439 U.S. 128, 143, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978); *State* v. *Joyce*, 229 Conn. 10, 20, 639 A.2d 1007 (1994)."

In *Hill*, our Supreme Court went on to state, "[a]bsent such an expectation, the subsequent police action has no constitutional ramifications." (Internal quotation marks omitted.) *State* v. *Hill*, supra, 237 Conn. 92, quoting *State* v. *Mooney*, 218 Conn. 85, 94, 588 A.2d 145, cert. denied, 502 U.S. 919, 112 S. Ct. 330, 116 L. Ed. 2d 270 (1991); *State* v. *Brown*, 198 Conn. 348, 355, 503 A.2d 566 (1986). Additionally, in *Hill*, our Supreme Court reiterated the two-prong test for determining standing

under article first, § 7, of the Connecticut constitution. "[T]o meet this rule of standing . . . a two-part subjective/objective test must be satisfied: (1) whether the [person contesting the search] manifested a subjective expectation. of privacy with respect to [the invaded premises]; and (2) whether that expectation [is] one that society would consider reasonable." (Internal quotation marks omitted.) *State* v. *Hill,* supra, 92, quoting *State* v. *Joyce,* supra, 229 Conn. 20. The court also held that this is the same test as that under the United States constitution. *State* v. *Hill,* supra, 92 n.17.

In the present case, the defendant's argument is predicated on his establishing that he had a reasonable expectation of privacy in the apartment of his friend's mother at the time of the seizure. Unless the defendant is able to establish that he had a reasonable expectation of privacy in the apartment, he lacks standing to claim any fourth amendment violations. The defendant has the burden of proving that he had a reasonable expectation of privacy in the premises. *State* v. *Callari,* 194 Conn. 18, 23, 478 A.2d 592 (1984), cert. denied, 469 U.S. 1210, 105 S. Ct. 1178, 84 L. Ed. 2d 327 (1985). This allocation of burden was reaffirmed in *State* v. *Hill,* supra, 237 Conn. 92–93.

The defendant urges a contrary view by (1) relying on *State* v. *Geisler,* 222 Conn. 672, 682, 610 A.2d 1225 (1992), for the principle that "warrantless searches and seizures inside a home are 'presumptively unreasonable' " and (2) arguing that this presumption directly applies to the circumstances in the present case. We are not persuaded.

The defendant applies an overly broad and self-serving construction to *Geisler.* A close reading of the majority opinion reveals that this quotation is qualified by the statement, "[a]bsent consent to entry or exigent circumstances, a judicial determination of probable

cause must stand in between the police and the door of a person's home, whether the object of an entry is to search and seize or to arrest." (Internal quotation marks omitted.) Id., quoting *State* v. *Ruth*, 181 Conn. 187, 193, 435 A.2d 3 (1980). When we consider these two quotations from *Geisler*, it is clear that the holding is limited to the circumstances of *Geisler* and *Ruth*, namely, when the party is in his or her own home. In the present case, the dwelling was not the defendant's home. Nowhere in *Geisler* is there support for the much broader construction suggested by the defendant. See *State* v. *Geisler*, supra, 222 Conn. 672.

In denying the motion to suppress, the trial court articulated its findings of fact. It found, inter alia, that although the defendant was welcome to visit the apartment, he was not an overnight guest, there was no evidence that he had been to the apartment at any time in the immediate past, there was no evidence that on the night of the arrest the defendant had been invited by any of the apartment's residents, and there was no evidence that the defendant had any prior meaningful contact with the premises. On the basis of the totality of these findings, the trial court concluded that (1) the defendant had not carried the burden of demonstrating subjectively that he had a reasonable expectation of privacy or (2) that society would recognize that the defendant had a reasonable expectation of privacy under the circumstances.

The trial court clearly articulated the facts and the law that formed the basis of its conclusion that the defendant did not meet the burden of establishing a reasonable expectation of privacy and, accordingly, held that the defendant did not have standing to invoke his fourth amendment rights. On the basis of our plenary review of this question of law, which we conduct in light of the trial court's factual findings; see *Connecticut Associated Builders & Contractors* v. *Anson*, 251 Conn.

202, 209, 740 A.2d 804 (1999); we do not find that the court's decision was clearly erroneous. Because we agree with the trial court's finding that there was no reasonable expectation of privacy and, therefore, a lack of standing, we do not reach the other elements of the defendant's first issue.

## II

The defendant next claims that the seizure was not permitted under the *Terry* stop doctrine set forth in *Terry* v. *Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). The *Terry* stop doctrine deals with the reasonable, articulable suspicion required to stop and search a suspect without a warrant. Id. The defendant has not briefed the law on reasonable articulable suspicion as it applies to the present case. The portion of the defendant's brief pertaining to the *Terry* stop doctrine is limited to an argument based on the propriety of the officer's entry into the apartment. The defendant's argument is based solely on his claim that he had a reasonable expectation of privacy in the apartment where he was seized. We disposed of this claim in part I of this opinion. Accordingly, we do not reach the *Terry* stop issue.

The judgment is affirmed.

In this opinion the other judges concurred.