[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The Defendant has moved to suppress statements of Dara Wickes, a co-defendant and also his wife, alleging that it was derivative of her illegal seizure, based on an arrest warrant which allegedly misled the issuing judge. Defendant claims that the arrest warrant for Dara Wickes contained, "reckless, false, and misleading statements and omissions on key elements relevant to the issue of probable cause to arrest" and, but for those statements and omissions, the arrest warrant would not have been signed, Dara Wickes would not have been arrested and would have never implicated the Defendant in the crimes alleged.
The State raised the preliminary issue of whether the Defendant had the necessary expectation of privacy under either the United States or Connecticut Constitutions to seek suppression of Dara Wickes statements. This Memorandum of Decision addresses that preliminary issue.
From the briefs and oral argument, the Court finds that on November 30, 1997, Kevin Wickes (Defendant) and his wife Dara Wickes reported to police that their van had been stolen. On December 4, 1997, the van was found in the Thames River off of Groton. On May 12, 1999, arrest warrant applications seeking the arrest of the Defendant and Dara Wickes, were signed by a judge. By information, the Defendant and Dara Wickes were charged with criminal attempt to commit larceny in the first degree in violation of General Statute 53a-122, and criminal attempt to commit insurance fraud in violation of General Statute 53a-215.
On or after May 12, 1999, Dara Wickes began discussions with the state regarding the disposition of her case. On May 26, 1999; Dara Wickes provided a written statement implicating the Defendant in the crimes charged. Prior to May 12, 1999, Dara Wickes had maintained that neither she nor the Defendant were involved with the theft of the van.
At the suppression hearing, defense counsel urged the Court to grant "automatic standing" to the Defendant, claiming that he was the target of the police investigation into the disappearance of the van. He claims that but for the allegedly false arrest warrant, Dara Wickes would not have implicated him and her statement is the fruit of the poisonous arrest warrant and should be suppressed. CT Page 11144
Federal and state law both recognize and acknowledge adherence to the policy that the Fourth Amendment protects persons, not places, and is a right that cannot be raised vicariously, but must be pursued personally. See Minnesota v. Carter, 525 U.S. 83, 88, 119 S.Ct. 469, 142 L.Ed.2d 373
(1998); see also United States v. Salvucci, 448 U.S. 83, 87,100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); Rakas v. Illinois, 439 U.S. 128,99 S.Ct. 421, L.Ed. 387 (1978), reh'g denied 439 U.S. 1122, 99S.Ct. 1035,59 L.Ed.2d 83 (1979); Katz v. United States, 389 U.S. 347, 351, 353,88 S.Ct. 507, 19 L.Ed.2d 576 (1 967); State v. Brosnan, 24 Conn. App. 473,478, 589 A.2d 1234 (1991), rev'd in part, aff'd in part 21 Conn. 788,608 A.2d 49 (1992). The person challenging the illegal search and seizure bears the burden of proving that he or she possessed a "reasonable expectation of privacy" in the thing or place searched. State v.Pittman, 209 Conn. 596, 601, 553 A.2d 155 (1989); see State v. Bernier,246 Conn. 63, 76 71 7 A.2d 652 (1 998) (holding that "[t]he defendant bears the burden of proving that his privacy interests in the place searched are reasonable."); see generally Minnesota v. Carter, supra525 U.S. 88 (discussing a defendant's ability to prove a Fourth Amendment violation); see also Rawlings v. Kentucky, 448 U.S. 98, 104,100 S.Ct. 2556, 65 L.Ed.2d 633 (1980).
Under both the Fourth Amendment to the United States Constitution and Article First, Section 7 of the constitution of Connecticut, a search conducted without a warrant is per se unreasonable. See Steagald v.United States, 451 U.S. 204, 211, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981); see also Katz v. United States, supra 389 U.S. 357; State v. Joyce,229 Conn. 10, 24-25, 639 A.2d 1007 (1994), cert. denied 523 U.S. 1077,118 S.Ct. 1523, 140 L.Ed.2d 674 (1994). A defendant will not be permitted to challenge the unreasonableness of the warrantless search and seizure absent a showing that that particular defendant possessed: 1.) a legitimate expectation of privacy; and 2.) that expectation is deemed reasonable by society. See Minnesota v. Carter, supra, 525 U.S. 88; see also State v. Bernier, supra, 246 Conn. 72; State v. Hill, 237 Conn. 81,92, 675 A.2d 866 (1 996); State v. Joyce, supra, 229 Conn. 20.
In 1978, the Supreme Court of the United States abolished the notion of "automatic standing" as it related to federal Fourth Amendment search and seizure challenges. See Rakas v. Illinois, supra, 439 U.S. 138. Since that holding, the Court has repeatedly reaffirmed its decision and expressly held that a search and seizure challenge is best reviewed "within the purview of substantive fourth amendment law than within that of standing." Rakas v. Illinois, supra, 439 U.S. 140. Previously, "standing" to challenge a Fourth Amendment violation could be conferred upon an individual merely because he or she was the "target" of a search. See id. 136 (discussing target theory as allowing "those against whom the CT Page 11145 search was directed" to raise a Fourth Amendment challenge, regardless of the privacy interest the target possessed in the place searched).
The Court has consistently upheld its rejection of standing in favor of review under a substantive Fourth Amendment claim. See United States v.Salvucci, supra, 448 U.S. 87; see also Minnesota v. Carter, supra,525 U.S. 88. Rather than analyzing a Fourth Amendment challenge under the traditional standing doctrine, which requires a party to allege an injury-in-fact and assert his or her own rights, the Court asks: "whether the challenged search and seizure violated the Fourth Amendment rights of the criminal defendant who seeks to exclude the evidence obtained during it." Rakas v. Illinois, supra, 439 U.S. 139-140.
The Supreme Court of Connecticut recognized that automatic standing no longer exists in the context of a federal constitutional challenge. SeeState v. Maia, 243 Conn. 242, 703 A.2d 98 (1 997). However, the court has yet to answer the question of whether automatic standing exists when a criminal defendant raises a search and seizure challenge under ArticleFirst, Section 7 of the constitution of Connecticut. See id. (noting that the question of automatic standing remains open in Connecticut).
The Supreme Court of Connecticut did find that "[t]he touchstone to determining whether a person has standing to contest and allegedly illegal search is whether that person has a reasonable expectation of privacy in the invaded place." State v. Hill, supra, 237 Conn. 92. The court proceeded to enumerate a two-part "subjective/objective" test that "must be satisfied" for a criminal defendant to prove that he or she possessed a "reasonable expectation of privacy." Id. Under the two-part test a criminal defendant must prove that: 1.) he or she "manifested a subjective expectation of privacy" with the place or thing searched; and 2.) the expectation is one that "society would consider reasonable." Id.
72.
In State v. Mitchell, 56 Conn. App. 561, 565-66, 744 A.2d 927 (2000), cert. denied, 253 Conn. 910, ___ A.2d ___ (2000), the Appellate Court of Connecticut interpreted the two-prong test set forth in Hill to be the test for determining standing under Article First, Section 7 of the constitution of Connecticut. The Mitchell court further found that this two-part test is "the same test as that under the United States constitution." State v. Mitchell, supra, 56 Conn. App. 566, citingMinnesota v. Olson, 495 U.S. 91, 95-96, 110 S.Ct. 1684, 109 L.Ed.2d 85
(1990) (holding that since Katz the law requires 1.) a legitimate expectation of privacy that 2.) "society is prepared to recognize as reasonable.) (Internal quotation marks omitted).
As the Defendant appears to concede and as the cases make clear, the CT Page 11146 Defendant can prevail here only if his claim of automatic standing under Article First, Section 7 of the constitution of Connecticut is adopted.
As stated previously, automatic standing under the Fourth Amendment has been abolished. Defendant, however, contends that this Court should grant him automatic standing because he was the target of the investigation and by expanding the potential class of challengers, a deterrent effect on police misconduct would be created. This would be in the best interests of public policy because, "it is a recognition that when the warrant rule is violated "we all lose' regardless of whether our "personal' rights were implicated. Defendant's Brief In Support of His Right To Conduct AHearing To Provide A Meaningful Remedy For Illegal Police Misconduct,
page 7.
The U.S. Supreme Court rejected this argument in Alderman v.United States when it stated, "[t]he deterrent value of preventing the incrimination of those whose rights the police have violated have been considered sufficient to justify the suppression of probative evidence even though the case against the defendant is weakened or destroyed. We adhere to that judgment. But we are not convinced that the additional benefits of extending the exclusionary rule to other defendants would justify further encroachment upon the public interest in prosecuting those accused of crime and having them acquitted or convicted on the basis of all the evidence which exposes the truth." Alderman v.United States, 394 U.S. 165, 174-175 (1969).
In Salvucci, the Court reiterated that, after the demise of the two initial rationales for automatic standing, the doctrine would serve only to "afford a windfall to defendants whose Fourth Amendment rights have not been violated. The Court stated, "we are unwilling to tolerate the exclusion of probative evidence under such circumstances since we adhere to the view of Alderman that the values of the Fourth Amendment are preserved by a rule which limits the availability of the exclusionary rule to defendants who have been subjected to a violation of theirFourth Amendment rights." Salvucci, supra, 448 U.S. 95.
Most states follow the Fourth Amendment analysis set out in Rakas as opposed to the older Jones standard. of the few states that permit automatic standing, most have very particularized standards of when it will be permitted. For example, Alaska provides a qualified right to automatic standing where the defendant can show that the police engaged in "gross" or "shocking" misconduct or an intentional violation of the codefendant's rights. Waring v. State, 670 P.2d 357 (1983).
While this Court recognizes that the Connecticut constitution can afford our citizens greater rights than afforded by the Fourth Amendment CT Page 11147ex: State v. Miller, 227 Conn. 363 (1993), considering the rationale used by the U.S. Supreme Court for abandoning automatic standing and that the Connecticut Supreme Court has consistently continued to use the two-part expectation of privacy test, this suggests that automatic standing does not exist under the Connecticut constitution. Defendant has shown no legal basis why he should be permitted to raise the alleged violation of a third party's rights.
Accordingly, the Court finds in the instant case that the Defendant cannot challenge use of the co-defendant's statements via his Motion to Suppress.
Hon. Stuart M. Schimelman