[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The defendant, Joel D. Charron, alleges that the state police observed marijuana growing behind the property of 72 Old Canterbury Road in Hampton, Connecticut, while conducting marijuana eradication on August 10, 2001. The state police search team obtained consent from the defendant's son, Joel D. Charron, Jr., on August 11, 2001, to conduct a complete search of his residence at 72 Old Canterbury Road, including the bedroom, garage and outbuildings. The consent also authorized the police to take such materials and other property as they may desire. The defendant allegedly owns two acres of land in the rear of Joel D. CT Page 1500 Charron's residence at 72 Old Canterbury Road. The police seized the marijuana from the two acre lot during their search of Joel D. Charron, Jr.'s property.
The defendant asserts that the seizure of the marijuana plants from his private property was not justified because he did not consent to a search of his land and the police did not have a search warrant. The defendant also argues that there were not exigent circumstances that justified the warrantless search and seizure of his property. The defendant contends that the consent by Joel D. Charron, Jr., did not apply to the defendant's property. Therefore, the defendant argues that the court should suppress the evidence seized by the police without a warrant.
The state contends that the defendant did not own the land in question and, therefore, he did not have a legitimate expectation of privacy with respect to the land and no standing to object to the seizure of the evidence. The state also argues that if the defendant did have standing to object to the seizure of the evidence, then the court should find that the consent by Joel D. Charron, Jr., extended to the land surrounding the buildings, including the land where the marijuana was seized.
As a threshold issue, the court must determine whether the defendant has standing to challenge the legality of the search. See State v.Mitchell, 56 Conn. App. 561, 565, 744 A.2d 927 (2000). "The United States Supreme Court in United States v. Salvucci, 448 U.S. 83, 100 S.Ct. 2547,65 L.Ed.2d 619 (1980), overruled Jones v. United States, 362 U.S. 257,80 S.Ct. 725, 4 L.Ed.2d 697 (1960), thereby eliminating the rule that defendants had automatic standing to challenge the legality of a search that produced evidence against them. . . . Salvucci held that a defendant must first establish a reasonable expectation of privacy in the premises before he may assert that his fourth amendment rights have been violated by improper intrusion into those premises." Id.
"The application of the fourth amendment prohibition against unreasonable searches and seizures requires the defendant to establish that he had a legitimate expectation of privacy in the invaded area. . . . Absent such an expectation, the subsequent police action has no constitutional ramifications." (Citation omitted; internal quotation marks omitted.) State v. Mooney, 218 Conn. 85, 94, 588 A.2d 145 (1991). "The determination of whether a reasonable expectation of privacy exists is fact specific and requires a two part inquiry. The first inquiry is whether the individual has exhibited an actual subjective expectation of privacy, and the second one is whether that expectation is one that society is prepared to recognize as objectively reasonable." State v.DeFusco, 27 Conn. App. 248, 259, 606 A.2d 1 (1992); see also State v.Mooney, supra, 218 Conn. 94. "The burden is on the defendant to prove CT Page 1501 that his expectation of privacy in the place searched was one that society would recognize as reasonable." State v. Bernier, 246 Conn. 63,72, 717 A.2d 652 (1998).
"Although the Fourth Amendment protects people, not places . . . the place searched is highly relevant to the fourth amendment analysis because expectations of privacy in some places are afforded greater constitutional legitimacy than in others." (Citation omitted; internal quotation marks omitted.) State v. Mooney, supra, 218 Conn. 94-95. "Indeed, some places, such as the open fields, afford no legitimate expectation of privacy. Oliver v. United States, 466 U.S. 170, 176,104 S.Ct. 1735, 80 L.Ed.2d 214 (1984)." Id., 95. In Oliver v. United States,
supra, 466 U.S. 177, the United States Supreme Court concluded that the "government's intrusion upon the open fields is not one of those "unreasonable searches' proscribed by the text of the fourth amendment." The court reasoned that "open fields do not provide the setting for those intimate activities that the Fourth Amendment is intended to shelter from government interference or surveillance. There is no societal interest in protecting the privacy of those activities, such as the cultivation of crops, that occur in open fields. Moreover, as a practical matter these lands usually are accessible to the public and the police in ways that a home, an office, or commercial structure would not be. It is not generally true that fences or `No Trespassing' signs effectively bar the public from viewing open fields in rural areas. And . . . the public and police lawfully may survey lands from the air. For these reasons, the asserted expectation of privacy in open fields is not an expectation that "society recognizes as reasonable.'" Id., 179.
"At common law, the curtilage is the area to which extends the intimate activity associated with the sanctity of a man's home and the privacies of life . . . and therefore has been considered part of the home itself for Fourth Amendment purposes. Thus, courts have extended Fourth Amendment protection to the curtilage; and they have defined curtilage, as did the common law, by reference to the factors that determine whether an individual reasonably may expect that an area immediately adjacent to the home will remain private." (Internal quotation marks omitted.) Id., 180. "Conversely, the common law implies, as we reaffirm today, that no expectation of privacy legitimately attaches to open fields." Id. "The term open fields may include any unoccupied or undeveloped area outside of the curtilage. An open field need be neither open nor a field as those terms are used in common speech." (Internal quotation marks omitted.)United States v. Dunn, 480 U.S. 294, 304, 107 S.Ct. 1134,94 L.Ed.2d 326 (1987).
In the present case, the marijuana plants were growing in an open field behind Joel D. Charron, Jr.'s residence. Although the defendant asserts CT Page 1502 that he retained ownership in the fields in which the marijuana plants were growing, the defendant has not demonstrated that he exhibited an actual subjective expectation of privacy in the open field behind Joel D. Charron, Jr.'s residence. The defendant resides in New York and therefore, the fields are not a part of the curtilage of the defendant's home. Furthermore, there is no evidence that the defendant took any measures to protect the area from observation by the public. Indeed, the facts show that the police were able to view the plants from the air and from Joel D. Charron. Jr.'s property. The courts have made it clear that open fields afford no legitimate expectation of privacy and intrusion upon those fields is not an unreasonable search proscribed by the fourth amendment. Based on the evidence before the court, it is submitted that the defendant has not proven that he had a reasonable expectation of privacy in the fields behind Joel D. Charron, Jr.'s residence. Accordingly, it is submitted that the defendant does not have standing to challenge the seizure of the marijuana plants from his property without a warrant.
Even if the defendant could demonstrate that he had a reasonable expectation of privacy in the fields in which the marijuana was growing, the facts show that the police were on Joel D. Charron, Jr.'s property with Joel D. Charron, Jr.'s consent. The police could readily observe the marijuana plants growing in a field adjacent to Joel D. Charron, Jr.'s property. "The warrantless seizure of contraband that is in plain view is reasonable under the fourth amendment if two requirements are met: (1) the initial intrusion that enabled the police to view the items seized must have been lawful; and (2) the police must have had probable cause to believe that these items were contraband or stolen goods." (Internal quotation marks omitted.) State v. Eady, 249 Conn. 431, 437, 733 A.2d 112
(1999). "[W]hen the items that were seized were discovered during a lawful search authorized by a valid warrant [and when] they were discovered, it was immediately apparent to the officer that they constituted incriminating evidence . . . the seizure [is] authorized by the plain-view doctrine. . . . The police meet the immediately apparent requirement if, [up]on discovery, they have probable cause to associate the property in plain view with criminal activity without further investigation." (Citation omitted; internal quotation marks omitted.)State v. Montgomery, 254 Conn. 694, 706, 759 A.2d 995 (2000). "This doctrine is based upon the premise that the police need not ignore incriminating evidence in plain view while they are operating within the parameters of a valid search warrant or are otherwise entitled to be in a position to view the items seized." (Internal quotation marks omitted.) Id. The police were conducting a lawful search of Joel D. Charron, Jr.'s property; therefore, the initial intrusion that enabled the police to view the marijuana plants in the adjacent field was lawful. The police had also observed the marijuana plants from the air, which the United States CT Page 1503 Supreme Court has determined is legal and does not require a search warrant. See California v. Ciraolo, 476 U.S. 207, 214, 106 S.Ct. 1809,90 L.Ed.2d 210 (1986). It was reasonable for the police to conclude that the marijuana plants were illegal contraband and they were not required to ignore the incriminating evidence. Accordingly, the marijuana plants seized from the field that allegedly belongs to the defendant were discovered during a lawful search.
The defendant's motion to suppress is denied.
KOCAY, J.