STATE OF CONNECTICUT *v.* EDWARD JEVARJIAN
(AC 30485)

DiPentima, C. J., and Beach and Alvord, Js.

Argued June 3—officially released October 5, 2010

*Frank J. Riccio*, with whom was *Frank J. Riccio II*, for the appellant (defendant).

*Laurie N. Feldman*, special deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *John Waddock*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

ALVORD, J. The defendant, Edward Jevarjian, appeals from the judgment of conviction following his conditional plea of nolo contendere[1] to one count of possession of marijuana with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b). The plea followed the trial court's denial of the defendant's motions to suppress the evidence that law enforcement officials had seized from

---

[1] The defendant's plea was conditioned on his right to appeal the denial of his motions to suppress evidence in accordance with General Statutes § 54-94a.

his residence and garage and from a recreational vehicle that belonged to Dennis Earl Thompson that had been parked on the defendant's property. On appeal, the defendant claims that the court improperly (1) denied his first motion to suppress because law enforcement officials commenced the search prior to the time authorized in the search warrant, (2) denied his second motion to suppress that had been filed pursuant to *Franks* v. *Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), and (3) denied his motion to disclose the identity of a confidential informant. We affirm the judgment of the trial court.

The record reveals the following facts and procedural history. During the late evening hours of May 17, and into the early morning hours of May 18, 2007, law enforcement officials seized approximately 600 pounds of marijuana from the defendant's house and garage and from a recreational vehicle on the property that belonged to and was occupied by Thompson. The defendant and Thompson were arrested at that time. The defendant was charged with possession of marijuana with intent to sell by a person who is not drug-dependent in violation of § 21a-278 (b) and conspiracy to possess marijuana with intent to sell by a person who is not drug-dependent in violation of General Statutes §§ 53a-48 and 21a-278 (b). Except for sentencing, the cases of the defendant and Thompson were prosecuted simultaneously.

On August 13, 2007, the defendant filed a motion to suppress the evidence that had been seized, claiming that the search had commenced prior to the time the judge signed the search warrant. After a four day evidentiary hearing, the court denied the motion in a memorandum of decision filed May 13, 2008. On May 22, 2008, the defendant filed a second motion to suppress, seeking an evidentiary hearing pursuant to *Franks* v. *Delaware*, supra, 438 U.S. 154, claiming that the application for the

search and seizure warrant contained either a deliberate falsehood or a statement made in reckless disregard for the truth. Specifically, the defendant claimed that the search warrant affidavit contained uncorroborated assertions of an unreliable informant and, as such, did not provide a substantial basis to establish probable cause to conduct the search. The defendant also filed at that time a motion for disclosure of the name and location of the confidential informant who provided information contained in the affidavit. The court orally denied both motions on June 18, 2008. On July 16, 2008, the defendant entered a conditional plea of nolo contendere to one count of possession of marijuana with intent to sell in violation of § 21a-278 (b)[2] and was sentenced to eighteen years incarceration, suspended after eleven years, and three years probation. This appeal followed.

I

The defendant claims that the court improperly denied his first motion to suppress the evidence seized from the house, garage and recreational vehicle because the search was commenced prior to the time noted on the warrant by the judge who signed the warrant. Before addressing that claim, however, we first address the issue of the right of the defendant to challenge the search of Thompson's recreational vehicle.[3] The state argued, and the trial court agreed, that the defendant did not have standing to contest the search of Thompson's recreational vehicle. The defendant challenges that determination on appeal.

[2] The conspiracy charge against the defendant is still pending in the trial court. Nevertheless, the defendant's conviction on the possession with intent to sell count is a final judgment. See Practice Book § 61-6 (a), which provides in relevant part: "(1) . . . In cases where a final judgment has been rendered on fewer than all counts in the information or complaint, the defendant may appeal from that judgment at the time it is rendered. . . ."

[3] The state conceded that the defendant had standing to challenge the search of his home and garage.

A

"The touchstone to determining whether a person has standing to contest an allegedly illegal search is whether that person has a reasonable expectation of privacy in the invaded place. . . . Absent such an expectation, the subsequent police action has no constitutional ramifications. . . . In order to meet this rule of standing . . . a two-part subjective/objective test must be satisfied: (1) whether the [person contesting the search] manifested a subjective expectation of privacy with respect to [the invaded premises]; and (2) whether that expectation [is] one that society would consider reasonable. . . . This determination is made on a case-by-case basis. . . . Whether a defendant's actual expectation of privacy . . . is one that society is prepared to recognize as reasonable involves a fact specific inquiry into all the relevant circumstances. . . . Furthermore, [t]he defendant bears the burden of establishing the facts necessary to demonstrate a basis for standing . . . . [T]he trial court's finding [on the question of standing] will not be overturned unless it is legally or logically inconsistent with the facts found or involves an erroneous rule of law." (Citation omitted; internal quotation marks omitted.) *State* v. *Jones*, 113 Conn. App. 250, 266, 966 A.2d 277, cert. denied, 292 Conn. 901, 971 A.2d 40 (2009).

At the suppression hearing, the defendant testified as follows: Thompson, driving his recreational vehicle, arrived at the defendant's house on May 17, 2007, and parked his vehicle on the defendant's property; Thompson and the defendant went out to dinner; after dinner, Thompson and the defendant hooked up electric power and water from the defendant's house to the recreational vehicle in order that Thompson could use the washer, dryer, oven, dishwasher and air conditioning in his recreational vehicle; the defendant then left

Thompson, went into his garage and did not see Thompson again until the search was conducted; the search occurred approximately four hours after Thompson's arrival at the defendant's property; when law enforcement officials arrived to search the premises, Thompson was asleep in his recreational vehicle and the defendant was in his garage; Thompson had been to the defendant's property on three or four prior occasions and always slept in his recreational vehicle under the same arrangement with respect to utilities hookup; the defendant never slept or traveled in Thompson's recreational vehicle; and the defendant did not have keys to the recreational vehicle. On the basis of that testimony, the defendant argued that he had a reasonable expectation of privacy in Thompson's recreational vehicle, particularly because it was "attached" to his house and was part of his property's curtilage.

The concept of curtilage refers to those areas immediately surrounding the house in which expectations of privacy are normally the greatest. "At common law, the curtilage is the area to which extends the intimate activity associated with the sanctity of a man's home and the privacies of life . . . and therefore has been considered part of the home itself for Fourth Amendment purposes." (Citation omitted; internal quotation marks omitted.) *Oliver* v. *United States*, 466 U.S. 170, 180, 104 S. Ct. 1735, 80 L. Ed. 2d 214 (1984). "Curtilage has been defined by reference to the factors that determine whether an individual reasonably may expect that an area immediately adjacent to the home will remain private." (Internal quotation marks omitted.) *State* v. *Brown*, 198 Conn. 348, 359 n.9, 503 A.2d 566 (1986).

In the present case, the court found that the defendant's testimony failed to establish that the defendant was Thompson's overnight guest or social invitee with respect to Thompson's recreational vehicle. The court further found that the defendant's argument that

Thompson's recreational vehicle was an auxiliary building that should be considered part of the curtilage of the defendant's home was without legal support. As noted by the court, no evidence had been presented to show that the defendant even had the means of accessing the recreational vehicle. The court therefore concluded that the defendant did not have standing to challenge the search of Thompson's recreational vehicle.

The trial court clearly articulated the facts and the law that formed the basis of its conclusion that the defendant did not meet the burden of establishing a reasonable expectation of privacy in Thompson's recreational vehicle and, accordingly, held that he did not have standing to invoke his constitutional rights as to the evidence seized from that recreational vehicle. On the basis of our plenary review of this question of law, which we conduct in light of the court's factual findings, we do not find that the court's decision was clearly erroneous. See *State* v. *Mitchell*, 56 Conn. App. 561, 567–68, 744 A.2d 927, cert. denied, 253 Conn. 910, 754 A.2d 162 (2000).

B

As we previously noted, the defendant does have the right to challenge the search of his home and garage, and we therefore address his claim that the evidence was illegally seized because the search commenced prior to the time authorized by the judge who signed the warrant. In support of that claim, the defendant indicates that the judge noted the time as 10:51 p.m. when he signed each page of the search warrant. The search of the defendant's premises, however, commenced before 10:00 p.m. The defendant claims that the search was, therefore, premature and unlawful

under the federal and state constitutions.[4] The trial court, after testimony from several witnesses at the suppression hearing, determined that the time noted by the judge was a scrivener's error and that the search had commenced after the judge signed the warrant. Accordingly, the court denied the defendant's motion to suppress the evidence seized from his home and garage.

"Our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . . We undertake a more probing factual review when a constitutional question hangs in the balance." (Citation omitted; internal quotation marks omitted.) *State* v. *Clark*, 297 Conn. 1, 7, 997 A.2d 461 (2010).

The following additional facts are necessary for the resolution of the defendant's claim. At the suppression hearing, Bruce J. Lovallo, an officer with the Woodbridge police department, provided the following testimony. The application for the search warrant was prepared at the Woodbridge police department during the late afternoon and evening of May 17, 2007. At approximately 9:25 p.m., he and Robert Criscuolo, an officer with the New Haven police department assigned to the Statewide Narcotics Task Force, left the Woodbridge police department and drove to the residence of

---

[4] It does not appear that the court addressed a state constitutional claim in its ruling, and, on appeal, the defendant does not analyze his claim independently under our state constitution. Accordingly, we will confine our analysis to the right against unreasonable search and seizure guaranteed by the federal constitution. See *State* v. *Payne*, 121 Conn. App. 308, 311 n.2, 996 A.2d 302 (2010).

the Honorable Elpedio N. Vitale, a judge of the Superior Court, to obtain his signature on the warrant. They arrived at Judge Vitale's house within five minutes. As they sat at the kitchen table, Judge Vitale reviewed the application and gave it back to the officers. Criscuolo and Lovallo then each took an oath as to the representations in the affidavit and signed and dated it. Both officers also noted the time as 21:50 in military time, or 9:50 p.m. in civilian time, on the first page of the warrant. Judge Vitale then signed, dated and noted the time as 10:51 p.m. on each page of the warrant. Lovallo did not notice the discrepancy in the notation of the hour.

Judge Vitale handed the signed warrant to Lovallo, and the officers went back to their police vehicle. After Lovallo entered the vehicle, he called Gene Marcucci, the chief of the Woodbridge police department, from his police radio and notified him that the warrant had been signed. Marcucci testified that he received that call on his police radio sometime between 9:50 p.m. and 9:55 p.m. An exhibit submitted by the state confirmed that the call was placed at 9:55:22 p.m. and concluded at 9:56:22 p.m. Joseph B. Marchio, a sergeant employed by the Statewide Narcotics Task Force, testified that he received a call from Criscuolo that the warrant had been signed and that he then notified law enforcement officials waiting at the defendant's premises that the search could begin. Additionally, Marc Grandpre, a detective with the Connecticut state police, testified that he was the evidence officer involved in the collection of evidence at the defendant's premises. He testified that the seizure of the evidence on May 17, 2007, commenced shortly after 10 p.m.

On the basis of the testimony at the suppression hearing, the court found: "[F]rom the facts, it is clear that the search was conducted subsequent to Judge Vitale signing the warrant. The time placed by Judge Vitale of 10:51 p.m. was in error and that the correct time

was 9:51 p.m." The defendant claims that the court's determination was improper because (1) there was evidence that Judge Vitale did not make a mistake when he wrote 10:51 p.m. on the warrant or (2) if Judge Vitale was mistaken, law enforcement officials either had to correct the mistake or they had to wait until 10:51 p.m. to execute the warrant. We disagree.

With respect to the argument that the defendant had submitted evidence that corroborated the time of 10:51 p.m.,[5] it is apparent that the court chose instead to believe the testimony of Lovallo, Marcucci, Marchio and Grandpre. "[T]he determination of a witness' credibility is the special function of the trial court. This court cannot sift and weigh evidence." (Internal quotation marks omitted.) *State* v. *Jones*, supra, 113 Conn. App. 261 n.6. The record reveals that there was substantial evidence to support the court's finding that the search occurred after Judge Vitale signed the warrant and that the 10:51 p.m. notation of time was a scrivener's error.

The defendant next argues that the court could not reasonably conclude that the time notation was a scrivener's error because, in order to do so, the court had to rely on the improper admission of parol evidence that contradicted the terms of the warrant. He claims that the court was bound by the "four corners" of the search warrant. Specifically, he argues that (1) an act performed by a judge in his or her role as a judge cannot be characterized as a scrivener's error, (2) Judge Vitale's conduct in signing the warrant and noting the time of

---

[5] Some of the police photographs taken during the search were time-stamped 9:50 p.m. by the police camera. The state presented testimony, however, that the camera's internal clock was off by one hour because it had not been recalibrated to reflect daylight saving time. The other claimed inconsistent evidence was a police photograph of a SpongeBob SquarePants clock in a bedroom in the defendant's residence that showed the time as 9:45 p.m. Testimony indicated that the clock was operated by batteries and required manual setting.

its issuance, as required by General Statutes § 54-33a (c), was a judicial act and therefore could not be considered a scrivener's error and (3) the failure of the two officers to notice the discrepancy in time constituted police misconduct.[6] For those reasons, the defendant argues that parol evidence could not be used to contradict Judge Vitale's notation of time and that any incorrect information in the warrant would have invalidated the warrant.

The defendant's argument is unpersuasive. We first note that he has provided no credible authority to support his contention that a judge cannot make a scrivener's error. Next, "although probable cause must be determined from the four corners of the warrant, we are not confined to the four corners of the warrant in determining whether the affidavit in support of probable cause has been validly executed." *State* v. *Colon*, 230 Conn. 24, 34, 644 A.2d 877 (1994). The defendant's claim is that Judge Vitale's notation of time, if incorrect, invalidates the warrant because it was not properly executed. Technical errors in warrants, however, including clerical errors, do not automatically invalidate warrants. Errors must be evaluated by a court to determine whether they are of sufficient constitutional magnitude to require invalidation of the warrant and exclusion of the evidence obtained. See *State* v. *Browne*, 291 Conn. 720, 743–44, 970 A.2d 81 (2009). It follows, then, that an evidentiary hearing with testimony relative to the execution of the warrant is necessary and proper in order for the court to make the determination as to whether the notation of time was a scrivener's error or whether the search was premature.

[6] The defendant has cited no persuasive authority in support of his contention that the failure of law enforcement officials to notice a discrepancy in the time noted by the judge on a search warrant constitutes police misconduct. Additionally, there is nothing in the record to suggest that the officers intentionally disregarded the discrepancy or had any other improper motive. We therefore decline to afford this claim any further discussion.

The defendant's reliance on the statutory provisions of § 54-33a (c)[7] is unavailing. The defendant claims that the statute's requirement that the warrant "shall state the date and time of its issuance" compels the conclusion that the failure to follow that procedure flawlessly results in a "powerless document." According to the defendant, an error in the statutorily required notation of time could not be considered a ministerial mistake or scrivener's error, but must be considered a fatal flaw that necessarily invalidated the warrant.

Because this claim of the defendant involves a question of statutory interpretation, it is well established that our review is plenary. *State* v. *McCahill*, 265 Conn. 437, 446, 828 A.2d 1235 (2003). Section 54-33a (c) provides in relevant part that "[t]he warrant *shall* state the date and time of its issuance . . . ." (Emphasis added.) The word "shall" in statutes is generally mandatory "[u]nless the text indicates otherwise . . . ." *State* v. *Cook*, 183 Conn. 520, 522, 441 A.2d 41 (1981). When the language of the statute was amended by the legislature in 2000 to include the requirement of stating the date and time of the issuance of the warrant, the following language also was added: "The inadvertent failure of the issuing judge or judge trial referee to state on the warrant the time of its issuance shall not in and of itself invalidate the warrant." Public Acts 2000, No. 00-31.[8]

---

[7] General Statutes § 54-33a (c) provides in relevant part: "A warrant may issue only on affidavit sworn to by the complainant or complainants before the judge or judge trial referee and establishing the grounds for issuing the warrant, which affidavit shall be part of the arrest file. . . . The warrant shall state the date and time of its issuance and the grounds or probable cause for its issuance and shall command the officer to search within a reasonable time the person, place or thing named, for the property specified. The inadvertent failure of the issuing judge or judge trial referee to state on the warrant the time of its issuance shall not in and of itself invalidate the warrant."

[8] Representative Michael P. Lawlor, who moved for the acceptance of the favorable report of the joint committee on the judiciary and for the passage of the bill, made the following comment in the House of Representatives: "There was a concern in the committee that referring to having a time in

If, as the legislature has indicated, the failure to include the time does not invalidate a warrant, we see no logical reason whatsoever to conclude that this search warrant was invalidated when the time noted by Judge Vitale was proved to be a scrivener's error.

For these reasons, we conclude that the court properly admitted parol evidence regarding the signing and dating of the search warrant and its determination that the time noted by Judge Vitale as 10:51 p.m. was a scrivener's error was not clearly erroneous. We further conclude that the scrivener's error did not invalidate the search warrant and, therefore, the court's denial of the defendant's motion to suppress the evidence seized from his home and garage was not improper.

II

The defendant next claims that the court improperly denied his second motion to suppress filed May 22, 2008, in which he requested an evidentiary hearing pursuant to *Franks* v. *Delaware*, supra, 438 U.S. 154. The defendant alleged that the warrant application contained either a deliberate falsehood or a statement made in reckless disregard for the truth. He specifically claimed that a conversation recorded on May 17, 2007, in which the officer who prepared the affidavit for the search warrant was speaking with an officer familiar

the search warrant might give another technical argument to a defense attorney following the issuance of a search warrant, that if the time wasn't there, that would invalidate the whole thing on a technicality. When the amendment was adopted in the Judiciary Committee it said both date and time. I think it's fair to say that current case law says that a search warrant has to have a date on it, although the statute didn't say that and so this would restore the statute to what the current state law is, although not specific in the statute. But it would retain the portion of the bill which says that the inadvertent failure to include the time on the search warrant would not, in any way, invalidate the search warrant itself. I think this clarifies the intent of the bill, conforms with existing law and I urge its adoption." 43 H.R. Proc., Pt. 4, 2000 Sess., pp. 983–84.

with the confidential informant who had supplied information about the defendant, clearly indicated that the affidavit contained false or misleading statements about the reliability of the confidential informant.

The court permitted a preliminary showing by allowing the defendant to play that recording, which was contained on a compact disc, in the courtroom. The court then orally denied the motion for a full evidentiary hearing, finding that there was "no evidence of any type of deliberate falsehood or a reckless disregard for the truth." The court also denied the motion to suppress evidence, determining that the information found within the four corners of the affidavit established probable cause under the totality of the circumstances test. See *State* v. *Barton*, 219 Conn. 529, 544, 594 A.2d 917 (1991).

"In order for a defendant to challenge the truthfulness of an affidavit underlying a warrant at a *Franks* hearing, he must: (1) make a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit; and (2) show that the allegedly false statement is necessary to a finding of probable cause. . . . If the allegedly false statement is set aside, however, and there remains sufficient evidence to establish probable cause, a *Franks* hearing is not necessary. . . . Although the *Franks* decision referred only to false statements in the affidavit, we have held that material omissions from such an affidavit also fall within the rule . . . . As the Supreme Court noted in *Franks*, [t]here is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory . . . . There must be allegations of deliberate falsehood or of reckless disregard for the truth . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Ferguson*, 260 Conn. 339, 363–64, 796 A.2d 1118 (2002).

In the present case, the defendant challenges the affiants' statements as to the reliability of the confidential informant who provided certain information used by them in the search warrant application. Those portions of the affidavit provide: "That on April 27, 2007, Affiant Lovallo was contacted by a Statewide Narcotics Officer Criscuolo, who advised him that he had received information from Detective Bill Haas of the Milford Police Department that a person by the name of Ed Jevarjian, who is an approximately fifty year old male who lives at 244 Peck Hill Road in the town of Woodbridge, Connecticut receives periodic shipments of large quantities of marijuana at his Woodbridge residence. Further information was that every few months a R.V. type vehicle with [o]ut-of-[s]tate registration plates comes to [the defendant's] house and drops off approximately one hundred to two hundred pounds of marijuana, which [the defendant] stores in fifty gallon drums inside his garage next to an older style vintage Corvette. This information was that [the defendant] then breaks down the marijuana into either ten or twenty-five pound quantities, sells it to only a few select people and that this is [the defendant's] main source of income and he ([the defendant]) has been doing this for several years. The Statewide Narcotics Officer told Affiant Lovallo that he would contact him (Affiant Lovallo) with any further information concerning the next delivery of marijuana to [the defendant's] residence. Milford Police Department Officer Haas stated that he received the information concerning the illicit narcotics operation at this address from a confidential informant. This confidential informant has provided Officer Haas with information on previous occasions that has proven to be both accurate and reliable and corroborated by brother and sister police officers. Officer Haas stated that this confidential informant has provided information that has led to seizures and arrests. . . .

"That on May 17, 2007 this Affiant Lovallo was contacted by Detective Bill Haas of the Milford Police Department who stated that his reliable informant, who has provided him with accurate and credible information on past occasions, informed him today that a shipment of a large quantity of marijuana was being delivered to [the defendant's] residence sometime on the evening of May 17, 2007. Detective Haas told Affiant Lovallo that the marijuana was enroute to [the defendant's] residence from North Carolina in a motor vehicle which he described to [Detective] Haas as being an R.V. type camper vehicle which may be towing a Chevrolet Avalanche or GMC Yukon vehicle. Additional information provided by the reliable informant to [Detective] Haas was that the R.V. camper vehicle was being driven by a man named Earl who was bragging that his shipment contained 300 lbs. of marijuana that was being concealed in the floorboards of this R.V. camper vehicle." (Internal quotation marks omitted.)

The defendant claims that it is apparent from the conversation between the officers on the compact disc that the informant was not reliable[9] and that the assertions were uncorroborated. The defendant argues that the "glaring inconsistency between the affidavit and the recorded conversation clearly demonstrates that the

---

[9] The transcript of the recorded conversation provides:

"[Marchio]: Hey Bill, how are you?

"[Haas]: Not too bad.

"[Marchio]: Bill, just to make this a little stronger, I just want to know some stuff about the [confidential informant]. Okay, I don't care anything about the name or anything like that, but . . . Did you ever get any search warrants with the [confidential informant]?

"[Haas]: No. Never. Not any stuff like that. He gave me [unintelligible] some information [unintelligible] to make an arrest or something like that, but never any stuff like that. No, no search warrants.

"[Marchio]: So, so . . . How many arrests have you made with this guy, based on his information?

"[Haas]: [Unintelligible] A couple.

"[Marchio]: Can I put . . . what could . . . approximately . . . you know, several arrests?

"[Haas]: Yeah, several is good, yeah.

omission of the information as to the quality of the

"[Marchio]: Based on his information?

"[Haas]: [Unintelligible]

"[Marchio]: Okay. And, uh, what else can I put, that you corroborated, oh . . .

"[Haas]: Yeah, that I corroborated some of the stuff that he told me. Definitely. [Unintelligible]

"[Marchio]: Accurate and true, and all that?

"[Haas]: Yes.

"[Marchio]: Okay, and did you ever seize anything [unintelligible] besides an arrest? Like, on those [unintelligible] did any of them ever have any kind of pot or coke or crack or anything like that on them?

"[Haas]: No, but he gave me information about other stuff that, I mean, I knew was true. Like, he gave me information and I arrested people that had drugs, not based on what he told me, but he had told me these people were doing stuff and I, you know . . .

"[Marchio]: . . . But it corroborated, you cor . . .

"[Haas]: . . . Yeah.

"[Marchio]: You corroborated what they said and after the arrest you found it to be true.

"[Haas]: Yes.

"[Marchio]: So, so his information has helped you [unintelligible] . . .

"[Haas]: . . . His information was corroborated, yeah . . . [unintelligible]

"[Marchio]: . . . I just want to make sure . . . [unintelligible] . . . put down something like he, you know, he, um, gave you information that led to the arrest of you know, uh, several persons, uh, which had narcotics on their person or in the area of, you know. Is that okay, or no?

"[Haas]: [Unintelligible] That sounds good. That will do.

"[Marchio]: I don't want to lie [unintelligible] either . . . [unintelligible] . . . right, right, but because of what he told you, you corroborated it, and it helped you make that arrest.

"[Haas]: Yep. But that stuff, I corroborated. The info he gave me, you know what I mean.

"[Marchio]: But like he said this: 'This guy's doing narcotics . . . .'

"[Haas]: Exactly. He might not have gotten arrested immediately, but down the road that person might have got arrested a couple of weeks later.

"[Marchio]: Right, right. But because of what he told you, you corroborated it, and it helped you make that arrest.

"[Haas]: Yes.

"[Marchio]: As long as we can have that conversation, that's good and that will help with this, okay?

"[Haas]: Yes.

"[Marchio]: Now is this guy your [confidential informant]?

"[Haas]: He's not . . . not really, I will say, we never [unintelligible] . . . We never, uh . . .

informant's past performance and 'track record' was not merely accidental." According to the defendant, as forcefully argued by counsel for the defendant and Thompson during the hearing on the motion before the trial court, the inflection of the voices and the pauses in the conversation heard in the recording virtually compel the conclusion that the officers were attempting to create a false impression of reliability when the informant clearly was unreliable.

The court, after noting that it read the affidavit several times, read the transcript of the recorded conversation and listened to the compact disc with everyone present in open court, made the following ruling: "These police officers were trying to do the right thing in my opinion. I find no evidence of any type of deliberate falsehood or a reckless disregard for the truth. Even if I took out the word 'reliable' and just said, an informant, the

"[Marchio]: So he's not signed up with your department?

"[Haas]: No, he's not. [Unintelligible] He hasn't signed up with our narcs, narcotics division, no.

"[Marchio]: Does your department require you to sign up all of your [confidential informants]?

"[Haas]: Uh, well, for our narcotics, for our narcotics division [unintelligible] yeah, they do.

"[Marchio]: How about other [confidential informants]?

"[Haas]: No.

"[Marchio]: Has he ever led you, has he ever led you to, uh, any other information besides [unintelligible]?

"[Haas]: No. I would say no.

"[Marchio]: Okay. All right.

"[Haas]: I mean [unintelligible] I know he's telling me the truth. He's right on.

"[Marchio]: I'd sign him up as soon as possible.

"[Haas]: I couldn't hear what you said.

"[Marchio]: I'd sign him up as soon as possible.

"[Haas]: Yeah, but he won't, he won't. He's just set against it. He knows this guy's a friend of his, and he just won't do it. I've tried several times and he just won't do it.

"[Marchio]: He just won't sign up to be a [confidential informant] . . . [unintelligible]

"[Haas]: Okay. If you need me, you can talk to me anytime during the night."

detailed information with the corroboration supports that informant's reliability and knowledge." The court then denied the request for a *Franks* evidentiary hearing and, for the same reasons as it previously articulated, denied the motion to suppress.

The court's findings are amply supported by the record. The court, as requested by defense counsel, assessed the credibility of the officers, in part, by the tone of their voices and the flow of their recorded conversation. "[T]he determination of a witness' credibility is the special function of the trial court. This court cannot sift and weigh evidence." (Internal quotation marks omitted.) *State* v. *Jones*, supra, 113 Conn. App. 261 n.6. The trial court found no evidence of a deliberate falsehood or reckless disregard for the truth. The defendant therefore failed to make the preliminary showing that was necessary to be entitled to a *Franks* hearing.

Moreover, as indicated by the court, even if the affidavit had omitted the characterization of the informant as reliable, other facts existed that were sufficient to sustain a finding of probable cause. "[I]f, despite a violation of *Franks* v. *Delaware*, supra, 438 U.S. 154, the affidavit's remaining content independently establishes probable cause, the warrant is valid and the evidence seized pursuant to it need not be suppressed." (Internal quotation marks omitted.) *State* v. *Mordowanec*, 259 Conn. 94, 107–108, 788 A.2d 48, cert. denied, 536 U.S. 910, 122 S. Ct. 2369, 153 L. Ed. 2d 189 (2002).

In addition to the portion of the affidavit that recited the information that had been given to Detective Haas by the informant, the affidavit contained the following corroborating information. Lovallo confirmed that a fifty-four year old male with the defendant's name resided at the address given by the informant. He also confirmed that one of the motor vehicles registered to the defendant was a vintage 1963 Chevrolet Corvette.

Lovallo further indicated in the affidavit that he recalled that the Woodbridge police department had received a complaint from a Woodbridge resident years ago about the smell of burnt marijuana in the area. The complainant told responding officers that she had smelled the burnt marijuana approximately three to four times a week since December, 2001. A check of the Woodbridge police records confirmed that the complaint had been made on March 9, 2002, and the record of that incident indicated that the officers were unable to locate the source of the smell at that time. Lovallo indicated that on April 27, 2007, he and another officer determined that the complainant's residence was in close proximity to the defendant's residence.

The affidavit further provides that, after Haas contacted Lovallo on May 17, 2007, law enforcement officials set up surveillance in the vicinity of the defendant's residence that same day at approximately 5:30 p.m. At approximately 7:45 p.m., an officer observed an R.V. type camper vehicle towing a Chevrolet Avalanche approach the defendant's residence and park next to the defendant's detached garage.

The court reasonably concluded that the police investigation confirmed the informant's report and established that the informant had obtained the information in a reliable way. "[S]tatements made by an informant are entitled to greater weight if corroborated by evidence independently gathered by the police." *State* v. *Rodriguez*, 223 Conn. 127, 136, 613 A.2d 211 (1992). "The theory of corroboration is that a statement which has been shown true in some respects is reasonably likely to be true in the remaining respects." *State* v. *Jackson*, 162 Conn. 440, 447, 294 A.2d 517, cert. denied, 409 U.S. 870, 93 S. Ct. 198, 34 L. Ed. 2d 121 (1972). As determined by the court, the informant's statements, as corroborated by other extrinsic evidence, provided a substantial basis for the issuing judge to conclude

that such information was reliable. The court, therefore, properly denied the defendant's second motion to suppress evidence.

### III

The defendant's final claim is that the court improperly denied his motion to disclose the name and location of the confidential informant who supplied the information to Haas. The defendant argues that he was entitled to learn the identity of the informant in order to assist him in the preparation of his defense. We conclude that this issue is not reviewable.

Immediately after the denial of the defendant's second motion to suppress on June 18, 2008, the court addressed the defendant's motion to disclose the informant's identity. When the court asked counsel for the defendant to proceed with his argument, counsel indicated that he had purposely requested that the motion for disclosure be heard subsequent to his motion to suppress evidence because the identity would have been important if the court had granted his request for a *Franks* hearing. Counsel indicated: "That's the only basis upon which—that I filed the motion. . . . Obviously I recognize that, I'm not entitled to know who he is, I will—as you can see why I dovetailed the two motions." The court denied the motion.

Furthermore, the claim is not reviewable because the defendant filed a conditional plea of nolo contendere in accordance with General Statutes § 54-94a. That statute provides in relevant part: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law provided a trial court has determined that a ruling on such motion to suppress or motion to

dismiss would be dispositive of the case. *The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. . . ."* (Emphasis added.) General Statutes § 54-94a. Denial of the motion for disclosure is not reviewable because it is not one of the grounds set forth in § 54-94a for appeal from a judgment on a plea of nolo contendere; *State* v. *Greene*, 81 Conn. App. 492, 501–502, 839 A.2d 1284, cert. denied, 268 Conn. 923, 848 A.2d 472 (2004); and the trial court did not determine that the ruling on that motion was dispositive of the case. See *State* v. *Munoz*, 104 Conn. App. 85, 92, 932 A.2d 443 (2007).

The judgment is affirmed.

In this opinion the other judges concurred.